# Brooke's Appeal.

A woman, who had made no will, on her death-bed requested A., her son, and only child, to pay the interest of a sum of money to B., her sister, during life, the principal to be paid to B.'s daughters after the death of their mother. She also requested her son to purchase a watch for one of B.'s daughters. A. reduced the terms of these requests to writing, naming himself as trustee, subscribed his name thereto, read it to his mother, and asked her if it was right, to which she answered, "Yes." After his mother's death A. gave to B. the memorandum which he had made of his mother's requests, and paid to her during her life the income on the sum stipulated. He also purchased and presented the watch as requested. A bill in equity having been filed by B.'s daughters after their mother's death to enforce the trust created in their favor:

*Held*, that after A.'s written acceptance of the trust and the continued recognition of the obligation thereby imposed upon him he could not deny its existence, and that therefore complainants were entitled to the relief sought.

March 2d, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Appeal from the Court of Common Pleas of *Berks county :* Of January Term 1885, No. 94.

Appeal of John B. Brooke from a decree of the said court.

Bill in equity, between Kate B. Hale and Louisa Von Bonhorst, complainants, and John B. Brooke, defendant, to compel the defendant to execute a trust in favor of the plaintiffs, alleged to have been created by the defendant's mother in her lifetime and accepted by the defendant.

The defendant filed an answer, and the cause was referred to Richmond L. Jones, Esq., as Master and examiner, who reported the facts to be as follows :

Mrs. Catharine E. Brooke, a widow, died intestate in the city of Reading, November 2d, 1871, leaving an estate worth about $52,000. John B. Brooke, the defendant, was her only child, and upon her death took possession of her estate, without letters of administration, and continues to hold and enjoy the same. The plaintiffs, Kate B. Hale and Louisa Von Bonhorst, are the grandchildren of Dr. Diller Luther and his late wife, Mrs. Amelia H. Luther, who was the sister of Mrs. Cath-

arine E. Brooke, and died December 14th, 1872. Kate B. Hale and Louisa Von Bonhorst, the plaintiffs, became of age respectively, February 12th, 1878, and May 4th, 1880.

On the afternoon of the day preceding the death of Mrs. Brooke, she had a conversation with her son, the defendant, in which, after stating that this was probably her last illness, she said to him : " I wish you would give Aunt Luther $2,000." To which he answered : " I will, mother," and after a moment's reflection added : " I think it would be best to give Aunt Luther the interest of the $2,000, and at her death the principal to the children " (meaning the plaintiffs). She replied : " Very well." She then said : " I wish you would divide my chain between Helen (defendant's daughter), and Kate (one of the plaintiffs), and give one half to each, and the watch to Kate." He answered : " No, mother, I will not do so. I want Helen, as your grandchild, to have the watch and chain. I will buy a watch and chain for Kate." To which she replied : " Very well." The defendant then made a memorandum of the result or conclusion of the conversation, which he signed and submitted to his mother, and asked her if it was right, and she said " Yes." The memorandum was as follows :

### " Memorandum.

" In a conversation with mother this afternoon (November 1st, 1871), she desired me in the event of her death to pay to Aunt Luther annually the interest of two thousand ($2,000) dollars. At her death the principal is to be equally divided and one half *settled upon* each of her grand-nieces, Katie and Lulie. I to be the trustee of this sum until they become of age. She also wishes me to purchase for Kate on her 16th birthday a handsome gold watch and chain. Helen is to have the watch and chain she wears.

" (Signed,)    John B. Brooke."

The next day (Mrs. Brooke being dead), the defendant said to Kate (one of the plaintiffs), that his mother had remembered her, that a gold watch was to be given her on her 16th birthday, and that the principal sum of $2,000 should be paid to her and her sister when they came of age. The defendant soon afterwards related to Dr. Diller Luther (the grandfather of the plaintiffs, with whom they lived), the conversation which had taken place between his (the defendant's) mother and himself, and delivered to Dr. Luther or to his wife, Mrs. Amelia H. Luther, the memorandum he had made of it at the time. The defendant afterwards delivered the gold watch and chain, purchased pursuant to the conversation aforesaid, to

Kate, and paid one year's interest on the sum of $2,000 to Mrs. Luther, and after her death paid one year's interest on said sum to the guardian of the plaintiffs. Since then no payments have been made.

The Master reported, inter alia, as follows:

" There is no difficulty as to the material facts of this case. Dr. John B. Brooke, the defendant, is the only witness of the conversation. between his mother and himself, on the day before her death, as to the provision to be made for the plaintiffs, and this claim therefore depends altogether upon the facts furnished by him. . . . . .

" The defendant maintains that the wishes of Mrs. Brooke, then expressed, were not in contemplation of the disposition of her own estate, which, in the absence of any action on her part, would presently descend by operation of law to him with whom the conversation was held, but were only kindly requests that he should, out of his own estate and at his convenience, make the provision she indicated. This view was also strongly urged by the learned counsel for the defendant, who argued that the love of the mother was so intense that she wanted the beneficiaries to feel that they were enjoying, not her bounty, but the bounty of her son ; but I cannot find in the evidence of the conversation, nor in the surrounding circumstances or conditions, any warrant for such an inference or conclusion. On the contrary, the conclusion is irresistible that the subject of the conversation was the disposition of the estate of Mrs. Brooke, and not of the prospective bounty of her son, and that it was so understood at the time by both parties. This is clearly indicated, on the one part, by the consciousness of Mrs. Brooke of impending death, and of the consequent release of her grasp upon her worldly goods, which were about to pass (she forbearing to act) by operation of law under the control of her son, to whom the wish was expressed ; by the specific directions given in immediate connection with the $2,000, concerning the disposition of her watch and chain, and by her acquiescence in his proposal that he should hold the money in trust until the plaintiffs became of age. And, on the other part, by the promise of the defendant to his mother that he would carry out her wish ; by his suggestions of detail as to the manner and method in which it should be done ; by his reduction of the result or understanding arrived at in the conversation to writing, and the submission of it to his mother for her approval, thus acknowledging her as a party ; by his declaration to Kate (one of the plaintiffs), on the very day of the death that his mother had " remembered her ; " by his delivery of the memorandum into the custody of the beneficiaries as evidence of his mother's wishes charged

upon him; and by his partial performance in the purchase and delivery of the watch and chain, and the payment of interest on the sum of $2,000 for two years."

After citing Strickland v. Aldridge, 9 Vesey, 519; McCormick v. Grogan, L. R. 4 H. L., 97; Barrow v. Greenough, 3 Vesey, 152; Hoge v. Hoge, 1 Watts, 214; Reech v. Kennegal, 1 Vesey, 123; Gaullaher v. Gaullaher, 5 Watts, 200; Schultz's Appeal, 80 P. F. S., 405; and Parker v. Urie's Ex'rs, 9 Harris, 309, the Master concluded his report as follows:

"Under the law, therefore, as applied to the facts of this case, I am of the opinion that Dr. John B. Brooke, the defendant, received from the estate of Mrs. Catharine E. Brooke, deceased, the sum of $2,000, in trust for the uses above specified, and that he now holds the sum of $1,000 with interest from November 2d, 1873, in trust for Mrs. Kate B. Hale, one of the plaintiffs, and the sum of $1,000 with interest from November 2d, 1873, in trust for Miss Louisa Von Bonhorst, one of the plaintiffs; that said sums and the interest thereon are due and payable to the said plaintiffs respectively, and I hereby recommend that a decree be made by the court ordering and directing him, the said defendant, to pay the same forthwith, and in addition thereto to pay the sum of $100, being the Master's fee, and to pay the other costs of this proceeding."

Exceptions filed to this report by the defendant were dismissed by the court and a decree was entered in accordance with the recommendation of the Master. The defendant thereupon took this appeal, assigning for error the action of the court in dismissing his exceptions, in confirming the Master's report and in entering the decree as above.

*Jeff. Snyder* and *Geo. F. Baer*, for appellant.—When the owner of an estate expresses a desire that after his death the heir-at-law give a sum of money to another person without a suggestion that the money shall come from the owner's estate, and the heir-at-law promises to comply with the request, in the absence of any intimation that the estate was suffered to descend because of such promise, such promise cannot be enforced by the person to whom the money was requested to be paid. In this case Mrs. Brooke meant the bounty to proceed from her son. It was not a case in which she intended to make provision out of her own estate for the appellees. In order to establish a trust of the nature claimed in this case there must be clearly proved actual, personal fraud of the party to be charged: Wallgrave v. Tebbs, 2 K. & J., 313;

Russell *v.* Jackson, 10 Hare, 204; Dowd *v.* Tucker, 41 Conn., 197; Robertson *v.* Robertson, 9 Watts, 36.

There was no fraud on the part of John B. Brooke. The mere fact that he inherited his mother's estate is not a con· sideration unless he secured that inheritance by his promise. His conduct shows the utmost frankness and candor. There was clearly no trust created by Mrs. Brooke. A trust arises where property has been conferred upon one person and accepted by him for the benefit of another. An excellent definition, approved by Perry, is : " A trust is in the nature of a disposition by which the proprietor transfers to another the property of the subject intrusted, not that it should remain with him, but that it should be applied to certain uses for the behoof of a third party." But Mrs. Brooke made no transfer of any property ; she designated no fund out of which the $2,000 should be paid. A day after the conversation with her son she died, and the intestate laws of the Commonwealth cast upon him the whole estate absolutely ; he took nothing by any act or deed of his mother, and in no legal sense was she the settlor of any trust. The promise made by the appellee to his mother was without consideration. It was *nudum pactum*, and cannot be enforced : Long's Appeal, 5 Norris, 196.

*Isaac Hiester*, for appellees.—The plaintiffs are entitled to relief in equity upon the facts of this case on three distinct grounds : (1) Legal fraud on the part of Dr. Brooke toward Mrs. Brooke in permitting her to die in the faith that her provision would be carried out, and in thus diverting her mind from establishing it in any more formal way. (2) A fully completed and executed trust, created by Mrs. Brooke, accepted by Dr. Brooke, proved in writing according to the Statute of Frauds, over the signature of the person to be bound, and rendered irrevocable by the death of the donor : or created by Dr. Brooke in the memorandum and interviews in which he constituted himself a trustee. (3) A ratification and recognition by Dr. Brooke of his obligation after the death of Mrs. Brooke, evidenced by his communicating the arrangement to the beneficiaries on several distinct occasions, and by continuing to make payments in pursuance of it.

Chief Justice MERCUR delivered the opinion of the court, March 16th, 1885.

We think the appellant took the property of his mother charged with the trust which she stamped upon it during her life. When she had the undoubted power of disposing of her property, she created the trust. The appellant accepted it. He reduced the terms thereof to writing, subscribed his name

thereto, read it to his mother, and asked her if it was right. She answered yes. On the day after her funeral he gave the declaration of trust to the life tenant therein mentioned, and paid to the latter during her life the sum stipulated. He also gave to his mother's grand niece, Kate, the watch in pursuance of the trust. After his written acceptance of the trust, and his continued recognition of the obligation thereby imposed on him, he cannot now successfully deny it. If he had refused assent to the dying request of his mother, she might have selected some more constant trustee.

> Decree affirmed and appeal dismissed at the costs of the appellant.