## Tyrrell's Estate.

*Stace B. McEntee*, for petitioner; *Thomas Ross*, for respondent.

BOYER, J., December 1, 1930.—Mary E. Tyrrell, the above decedent, died on March 13, 1927, leaving a last will and testament probated on February 8, 1928, whereby she appointed her two sons, Thomas Tyrrell and Richard Tyrrell, as executors. Richard Tyrrell, being a resident of the State of New Jersey, renounced his right to letters testamentary, and Thomas Tyrrell was appointed as the sole executor. The executor proceeded to settle the estate long before the will was actually probated. On February 25, 1928, he called together the heirs and legatees of the estate for the purpose of making final

distribution of the funds in his hands. Most of the parties in interest, including Annie H. Tyrrell, the petitioner, attended this meeting. At the meeting, the executor produced a statement of his account and schedule of distribution fully prepared in writing. The account included the payment of certain items of expense to Annie H. Tyrrell, and an item of $200 payable to her as "final payment for care of decedent." The account was drawn with considerable skill and clarity. When the account was submitted to the legatees it apparently aroused a great deal of objection and angry discussion amongst the distributees. Nevertheless, the checks for the various debts, expenses, compensation and distributive shares were finally handed out and accepted by the respective payees. A number of different checks were handed to Annie H. Tyrrell, who also accepted them and took them with her. No receipts or releases were taken. The distribution was made in accordance with the terms of the will, except as to a trust fund of $150 for the upkeep of the decedent's burial plot, which item was included in the schedule of distribution. Annie H. Tyrrell held all of her checks for approximately two months, and then, without any further protest, cashed them and appropriated the proceeds.

It appears from the depositions that Annie H. Tyrrell was a daughter-in-law of the decedent, having been married to the decedent's son, John Tyrrell. In 1923, the decedent went to live with her son, John Tyrrell, and his wife, the petitioner. Shortly thereafter she was taken ill, during all of which time the petitioner cared for her and nursed her while at their home. On several occasions the decedent went to live with other children, but later returned to the home of John Tyrrell. Her illness finally confined her to her bed so that she required the utmost and constant care and nursing on the part of Annie H. Tyrrell for a period or periods totaling 122 weeks. The decedent's condition was such as to require the most arduous attention, both day and night, all of which Annie H. Tyrrell gave unstintingly and by reason thereof won the decedent's affection and gratitude. The decedent told her that she was to have all of her estate in appreciation of what she was doing. After the death of the decedent, Annie H. Tyrrell sent a bill to the executor for $1342 for compensation for her services, being at the rate of $11 per week for 122 weeks. This bill was never paid by the executor, but he allowed her the sum of $200, as compensation for her services, in the settlement under which distribution was made at the family meeting above referred to.

Some time after Annie H. Tyrrell had cashed her checks, she wrote letters to the executor demanding payment of her original bill and insisted upon his filing a settlement of his accounts. On October 11, 1928, almost eight months after the family settlement above referred to, Annie H. Tyrrell filed a petition for this citation on the executor to file his account, thereby finally repudiating the family settlement made on February 25th.

While the petitioner, no doubt, had a claim that was meritorious both morally and legally, that is not the real question before us. The sole question is whether or not the settlement made on February 25, 1928, was a legal settlement and distribution of the estate, and whether the petitioner is now barred by reason thereof from insisting upon the filing of a settlement at this date and subsequently presenting her claim to the executor for allowance.

While the depositions which were filed enlist the sympathy of the court on behalf of the petitioner and convince the court of the faithful, self-sacrificing services rendered by the petitioner to the decedent, and that the small sum she received was grossly inadequate as compensation, we are confronted by the fact that a family settlement was made between the legatees and distributees on February 25, 1928, with full knowledge and fair disclosure of all

the facts. There is no allegation or proof that the executor did not account for every cent for which he was liable to account. The account or statement submitted by him on that day was clear and simple, so that its provisions could be understood by all who read them. It is admitted that the account was not only submitted to all those who were there, but it was read in their hearing. There is no contention that its provisions and items were not understood, either as to fact or legal effect. There is no allegation of any sort of misrepresentation, legal fraud or duress on the part of the accountant or anyone else. The only criticism of the settlement made on that day is to the effect that the parties were dissatisfied with it, and that it resulted in heated discussions. The petitioner states that she "protested" very strenuously against it, but she accepted the several checks which were tendered to her and took them with her, knowing that distribution was being made on the basis of the account submitted there that day, and that the other distributees were receiving their share of the estate under the account submitted. She must have known that the executor was parting with all the funds in his hands on the strength of her acceptance of the checks, and yet, with this knowledge, she accepted the checks and later cashed them. Had she rescinded her action in time for the executor to recall or stop payment on the other checks, she might then have some standing to take steps to collect the balance of her claim, but instead of doing this she held her checks for several months, which in itself would make it impossible for the executor to recall his payments. The mere fact that she may secretly have determined at the time that she would credit these payments on account of her claim, without definitely informing the executor of that fact, will not avail her now. She is now estopped by her acceptance of the checks from repudiating the settlement. We may add that her brother-in-law, Richard Tyrrell, in pleasing contrast to the action of some of the other members of the family, generously endorsed and gave the check for his distributive share to Annie H. Tyrrell so that she has actually received $510 as part compensation. However, this has nothing to do with the merits of the case.

Family arrangements are favorites of the law, and when fairly made are never allowed to be disturbed by the parties or any other for them: Walworth v. Abel, 52 Pa. 370; Wilen's Appeal, 105 Pa. 121. A division of a decedent's property contrary to the terms of the will will be upheld as a family arrangement: Brooke's Appeal, 109 Pa. 188; Johnson's Estate, 20 Phila. 22; Mershon's Estate, 8 Dist. R. 154. A family understanding concurred or acquiesced in by everyone interested will not be disturbed: Lightner's Estate, 187 Pa. 237.

We, therefore, conclude that the family settlement in this case was fairly made in that there was no fraud or legal duress and it was fully understood by all of the parties. Although it may not have been generous to, or advantageous for, the petitioner, she acquiesced in it by accepting its terms and payments thereunder, and is, therefore, legally bound by it. Its acceptance amounted to an implied release to the executor and, therefore, she has now no standing to require the executor to file a settlement of his accounts and to demand a redistribution. Likewise as to costs, although the court might wish to direct the executor to pay costs under the circumstances, it does not have any power to do so. In view of these conclusions, it is not necessary to consider any of the other questions raised.

Now, therefore, December 1, 1930, the citation is dismissed, at the cost of the petitioner.

From Isaac J. Vanartsdalen, Doylestown, Pa.