## Appeal of Wilen et al.

| 105 | 121 |
|-----|-----|
| 142 | 78 |
| 105 | 121 |
| 147 | 326 |
| 105 | 121 |
| 185 | 334 |
| 185 | 423 |
| 105 | 121 |
| 211 | 208 |
| 27 SC | ²323 |
| 27 SC | ²500 |

1. Family arrangements are favored in equity, and when valid will not be modified or disturbed by the courts against the objection of any of the parties to the same.

2. The widow of a testator and his brothers and sisters, being all the residuary legatees under his will, entered into an agreement under seal, whereby, in order "to avoid the expense of litigation incident to the determination of the rights of the parties under said will," they mutually agreed that during the life of the widow (who had remarried) the testator's executors should pay to her the one half of the income of all testator's residuary estate, and the other half thereof to testator's said brothers and sisters in equal shares. After some years, the said brothers and sisters claimed that one half of the principal of said residuary estate should be distributed to them, the other half to remain invested, the income thereof payable to the widow during her life. To this the widow objected, and the Orphans' Court refused to make such distribution.

   *Held,* that the agreement between the parties constituted a valid family settlement, and that the widow had a right to insist upon compliance with it, without regard to the question whether, as a matter of fact, her interests would be in any degree impaired by a present distribution as asked for.

January 18, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J. absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1883, No. 100.

This was an appeal by William B. Wilen, John Wilen, Mary Ann Gifford and Robert C. Brodie, Jr., administrator of Susanna Banes, deceased, from a decree of the said court sustaining the exceptions of Mrs. Emily S. Hales to the adjudication upon the second account of Thomas Banes, executor of George S. Wilen, deceased.

The facts were as follows : George S. Wilen, by his last will, gave to his widow, Emily S. Wilen, the income of his entire residuary estate so long as she remained his widow. In the event of her re-marriage, he directed that one half of said income should be paid to her thereafter during her life, and at her death (in the event of there being no living issue of the testator) the entire residuary estate to be equally divided between the testator's two brothers and two sisters. The testator died in August, 1863, without issue, leaving to survive him his widow and the two brothers and sisters named in his will. On June 8, 1870, the widow married Nathan S. Hales.

The executors paid the entire income of the residuary estate to the widow, until her marriage, and after that paid her one half of said income until June 29, 1872, when all the said residuary legatees entered into an agreement under seal, by

which, after reciting that " the brothers and sisters of the testator, claiming they are entitled to the remaining one half of said income, to avoid the expense of litigation incident to the determination of the rights of the parties under said will " it was "mutually agreed that the moiety of said income, now due and unpaid, shall be paid to the said brothers and sisters, namely: William Wilen, John Wilen, Mary Ann Gifford and Susannah Banes; and all income hereafter to accrue and become payable until the time that the principal becomes payable, on the death of the said widow, shall be payable and paid by the executors," one half to the widow and the other half to the brothers and sisters. This agreement was adhered to by all the parties from its execution until the present audit of the second account of the surviving executor in 1882, when the brothers and sisters of testator asked that one half of the principal of the residuary estate be awarded to them under said will.

The auditing judge (ASHMAN, J.) awarded one half of the principal to the executor, to be invested by him for the benefit of the widow for life, and the other half he distributed equally among the brothers and sisters, holding, that while the agreement of June 29, 1872, was valid and should be enforced if any valuable right of testator's widow would be impaired by its non-observance, yet it was immaterial to her whether she received one half of the income of the entire principal, or the entire income of one half of the principal.

Exceptions filed to this adjudication by Mrs. Hales were sustained by the court in banc, and a decree entered awarding the entire principal of the residuary estate to the surviving executor, to be by him invested and distributed in conformity with the agreement of June 29, 1872. Whereupon William B. Wilen, John Wilen, Mary Ann Gifford and Robert C. Brodie, Jr., administrator, took this appeal, assigning for error the sustaining of the said exceptions, and the decree.

*William Ernst*, for the appellants.—Under the will, the appellants took a vested estate, and on the marriage of the widow were entitled to its immediate enjoyment. Taylor *v.* Birmingham, 5 Casey, 306; Hotz's Estate, 2 Wr., 422; Patterson *v.* Swallow, 8 Id., 487; Woolman's Estate, 3 Id., 478. The agreement created but a trust, the benefit of which the appellants, for whose use it was made and all of whom are *sui juris*, could waive: Coover's Appeal, 24 P. F. S., 143; Culbertson's Appeal, 26 Id., 145. The widow has no standing to object. It affects no interest of hers, it impairs none of her rights. Whether she receive one half the income of the entire principal or the income of one half the principal, she

will in either event receive the full benefit of her bequest. But assuming that she has a standing to object, yet a non-assenting cestui que trust cannot prevent the other cestuis que trustent from receiving their respective shares of a trust. Henderson's Estate, 39 Leg. Intell., 450.

*G. Heide Norris* (with him *S. Henry Norris*), for the appellee, were not present at the argument, but subsequently submitted a paper book, in which it was argued that as this was a family compromise of a disputed right, it should be sustained; that as the investment of the entire principal was safer than the investment of a half, it could not be said that appellee's interest would be unaffected by the distribution asked for by the appellants.

Mr. Justice PAXSON delivered the opinion of the court, February 4, 1884.

It is quite possible that but for the agreement of June 29, 1872, the appellants would now be entitled to the distribution of one half of the corpus of the estate of George S. Wilen. But upon that day the legatees and the widow, being the only parties in interest, entered into an agreement under seal which provides, inter alia, that " to avoid the expense of litigation incident to the determination of the rights of the parties under said will, it is mutually agreed that the moiety of said income, now due and unpaid, shall be paid to the said brothers and sisters, namely: William Wilen, John Wilen, Mary Ann Gifford and Susannah Banes; and all income hereafter to accrue and become payable until the time that the principal becomes payable on the death of the said widow, shall be payable and paid by the executors as follows: One half to Mrs. Emily Hales, one eighth to William Wilen, one eighth to John Wilen, one eighth to Mary Ann Gifford, and one eighth to Susannah Banes; and that said payment shall be made hereafter semi-annually on the eighth day of June and December; the income now due, namely, $411.22, being paid at the execution of this agreement."

The effect of this agreement, briefly stated, is to keep the corpus of the estate *in solido* until the death of the widow, one half the income in the meantime to be paid to the widow, and the other half to be distributed among the appellants in the proportions above stated.

This arrangement appears to have been satisfactory to all the parties concerned until the filing by the surviving executor of George S. Wilen, deceased, of the second account of said estate, when the appellants claimed that under the will of the said testator, they are entitled to receive the one half of the

corpus of the estate now, and are not compelled to wait therefor until the death of the widow. The latter resists such distribution, and in this was sustained by the court below.

This brings us at once to the validity of the agreement, for its language is so clear that no dispute can arise as to its terms. If it is binding it is useless to discuss any of the questions of law arising under the will, for in such case the parties have made a law unto themselves.

The parties to this agreement were all sui juris, and the instrument was under seal. There is no allegation of fraud, and the contract is not obnoxious to any law or rule of public policy. It was a lawful agreement between parties able to contract. The object of it is expressly stated to be " to avoid the expense of litigation incident to the determination of the rights of the parties under said will." The settlement of family disputes has been repeatedly held to be a sufficient consideration to support a contract. The law is thus laid down by Mr. Bispham in his work on Equity, at page 192 : " And family compromises, especially if they are made in good faith and with full disclosure, are favored in equity, and may be sustained by the court, albeit, perhaps, resting upon grounds which would not have been considered satisfactory if the transaction had occurred between strangers." It was said by THOMPSON, J., in Walworth *v.* Abel, 2 P. F. S., 370, that "Family arrangements are favorites of the law, and when fairly made, are never allowed to be disturbed by the parties, or any other for them." See also Burkholder's Appeal, decided at the present term (*ante*, 31). We might multiply authorities upon this point, but the law is too well settled to require it.

The appellants have received the benefits, whatever they may be, under this agreement, and their turn having been served they now seek to repudiate it. They say that the widow has no interest which will be affected by the distribution, and that she has no standing to object. This is not so clear. Under the will it would doubtless be so, but the appellants have by their agreement conferred the right upon her to object. And we cannot say, or at least are not bound to say, and therefore will not, that her interests could not be in anywise affected by the distribution claimed. Under the will she could only have the interest upon one half the corpus of the estate. If that half should be lost by a bad investment, or any of the mischances that sometimes occur even with the most careful trustees, she would lose her income entirely. But with the corpus kept together, and a portion only lost, it may be a question whether she would not be entitled to one half the income of the residue. So that we cannot say in this pro-

ceeding that one half the income of the whole may not be more valuable to her than the income of a moiety.

This view renders the discussion of any of the remaining questions unnecessary.

> The decree is affirmed and the appeal dismissed at the costs of the appellants.