## Price's Estate.

*Wills — Construction — Trusts — Termination of — Spendthrift clauses—Accrued shares.*

1. Where the whole equitable interest in a trust fund has passed to testator's grandson and granddaughter, and the gift to the latter is subject to a spendthrift clause, the trust cannot be terminated, either in whole or in part, during her life, as the court cannot say that a moiety of the income of the whole may not be more valuable to her than the whole of the income from a moiety, and, hence, to protect her interest, the trust must be maintained, and cannot be determined as to the grandson's interest.

2. Where the testator directs that the "amounts" to be paid to his granddaughters shall not be subject to their debts, the direction applies to both original and accrued shares.

3. A direction in the will authorizing testator's grandchildren to dispose of their interests in the income of the estate by a duly attested will or writing in the nature thereof, and also of their interests in the principal, "to take effect on the partition of my estate," negatives the purpose to terminate the trust as to income while any of the grandchildren named in the will are alive, and indicates an intent that the principal is to remain intact, and as an entity until the time is ripe for a division thereof, which time, so fixed, was, in effect, the death of the survivor of the grandchildren.

4. Testator named in his will as *cestuis que trust* his wife, two daughters and three grandchildren, of whom one grandson and one granddaughter alone survived at the time of the audit. The gifts to his daughters and granddaughters were subject to spendthrift trust clauses. There was no gift of principal on the death of the grandchildren. On the other hand, each grandchild was given power to dispose of his or her share of the income as long as the trust continued, and also of his or her interest in the principal, to take effect upon the partition of the estate. At the audit of the account, filed by the trustee on the death of the widow, a grandson and granddaughter, in whom the entire beneficial interest had vested, requested that the trust be terminated and the award be made to them direct instead of to the trustee. The auditing judge refused the request: *Held*, no error.

. Exceptions to adjudication.   O. C. Phila. Co., Oct. T., 1890, No. 119.

The auditing judge, Gest, J., said in his adjudication, in substance, as follows:

"Isaac C. Price died on Aug. 8, 1889, leaving a will, by the eleventh paragraph of which he devised and bequeathed his residuary estate, real and personal, in trust to his wife, Harriet, and two others, who renounced, and in place of whom Henry S. Borneman was appointed a trustee Oct. 19, 1917, and further directed as follows:

" 'The balance or clear income of my estate I direct shall be divided quarterly commencing three months after my decease into ten equal parts and three of said equal parts I give, devise and bequeath to my said wife Harriet B. Price for her own use absolutely to be paid to her quarterly during all the term of her natural life in lieu and satisfaction of her dower or thirds for life in my estate. Two other of the said equal parts I give and devise and bequeath to my daughter Eliza P. Cadwallader for her own use absolutely. Two other of the said equal parts I give, devise and bequeath to my daughter Mary C. Ewing for her own use absolutely. And of the three remaining equal parts I give, devise and bequeath one thereof to each of my three grandchildren, viz., Isaac Price Ewing, Isaac Price Cadwallader and Mary Price Cadwallader, for their own use, to be paid to them quarterly during all the terms of their respective natural lives. . The amounts herein directed to be paid to each of my said daughters · and to my said granddaughter I direct shall be into their own hands respectively upon their own receipts, whether covert or sole, without any power on the part of any of them to sell, assign or transfer the same and not to be subject to their or either of their debts, contracts or engagements or to be divested by any judicial order, decree

or sale whatsoever nor to be subject to the interference or control, debts, contracts or engagements of any husband which either of my said daughters or granddaughter may at any time have or take. Upon the decease of my said wife or either 'of my said daughters I direct that the share of the income of my estate herein given to the one so departing this life shall thereafter be divided among my daughters and my said grandchildren then living and paid to them quarterly in the same proportions as is herebefore mentioned. Upon the decease of my said wife and both my daughters I direct that the entire net income of my said estate shall be paid to my said three grandchildren if then living in equal shares for and during all the terms of their respective natural lives, but should either of my said grandchildren be then deceased intestate leaving lawful issue or the issue of any deceased child him or her surviving my will is and I direct that such issue shall take, and if more than one divide equally among them the part or share of my estate the income whereof I have herein given to his or her or their deceased parent for life. Either of my said grandchildren may by last Will or Testament or writing in the nature thereof duly attested dispose of his or her interest in the income of my estate so long as the same shall be held in trust and also of her interest in the principal thereof, to take effect upon the partition of my estate.'

"Harriet B. Price died on Dec. 9, 1921, and this account is filed by the surviving trustee in order that the court might decide whether the trust has terminated. It is necessary to recount the history of the trust, and this I shall do as briefly as possible.

"The testator left him surviving his widow, Harriet B. Price, and two children, Eliza P. Cadwallader and Mary C. Ewing, the former having two children, I. Price Cadwallader and Mary P. Cadwallader (who afterwards married Charles W. Fourl), and the latter, Mary C. Ewing, having issue one child, I. Price Ewing. Mary C. Ewing, entitled to 2/10ths of the income, died April 10, 1893, whose share of the income passed to the daughters and grandchildren then living in the same proportions as before mentioned; that is, Eliza P. Cadwallader became entitled to 4/50ths in addition to her original 2/10ths, making 14/50ths, and each of I. Price Cadwallader, Mary P. C. Fourl and I. Price Ewing, previously entitled to 1/10th, became entitled in addition to 2/50ths. The entire income thus became distributable as follows: Harriet S. Price, 3/10ths, or 15/50ths; Eliza P. Cadwallader, 14/50ths; I. Price Cadwallader, 7/50ths; Mary P. C. Fourl, 7/50ths, and I. Price Ewing, 7/50ths.

"The next death was that of Eliza P. Cadwallader, entitled to 14/50ths, on April 1, 1916, and by the terms of the will this share passed to the three grandchildren equally, or 14/150ths to each, the distribution of shares becoming: Harriet B. Price, 45/150ths, or 9/30ths; I. Price Cadwallader, 35/150ths, or 7/30ths; Mary P. C. Fourl, 35/150ths, or 7/30ths, and I. Price Ewing, 35/150ths, or 7/30ths.

"On Sept. 18, 1917, I. Price Cadwallader died, and, being given a power of appointment over his income under the will of the testator, attempted to exercise the same; but his will was held to be invalid as such exercise of his power (Price's Estate, 27 Dist. R. 561), and, consequently, as this contingency was not provided for in the will of .Isaac S. Price, it was held by Lamorelle, P. J., in his adjudication on the second account of the trustee, that an intestacy resulted, and this share of the income became distributable to the heirs of Isaac C. Price; and, consequently, it was determined by Lamorelle, P. J., that the income of this share was distributable in equal shares to Mary P. C. Fourl and I. Price Ewing as representatives by devolution of the heirs of Isaac C. Price.

3 D. & C.

### Price's Estate.

"Finally, Harriet B. Price, the widow, entitled to 3/10ths of the income, died Dec. 9, 1921, and, according to the will, this share became distributable to the two grandchildren, namely, Mary P. C. Fourl and I. Price Ewing, who are now, therefore, entitled to the entire income of the estate in equal shares.

"In these circumstances, Mary P. C. Fourl and I. Price Ewing united in a request that the court should declare the trust terminated, and that the trust estate should be divided between them as the only two persons. having any interest herein, under the well-known principle of Culbertson's Appeal, 76 Pa. 145. Counsel filed elaborate briefs in support of this application, which was very properly opposed by Mr. Borneman as trustee.

"The gift of income, 2/10ths, to Mary P. Cadwallader Fourl was subject to a separate-use trust, but as it clearly appeared that, at the death of her father, the testator, she was neither married nor in immediate contemplation of marriage with a particular person, this provision of the will has no validity: Quin's Estate, 144 Pa. 444. It is stated, indeed, that she was but ten years old when the testator died, and was married on July 6, 1912. This, however, does not affect the clauses against alienation, generally termed a spendthrift trust clause, which remain in full force. Nor is it material that there is no express gift of the principal of the estate in remainder: Gunnell's Estate, 29 Dist. R. 1139; 269 Pa. 343. These principles are well settled, and if the above were the only material facts, it is clear that even if Mary P. C. Fourl were entitled absolutely to the remainder after the termination of her life estate, yet, as her income is subject to the above provisions of the will, the trust could not be terminated. The authorities have recently been collected in Malatesta's Estate, 29 Dist. R. 113.

"It is necessary, however, in the facts of this case, to examine more at large the provisions of this somewhat peculiar will.

"In the first place, the duration of the trust, or the period of the final distribution of the principal, is not stated with absolute clearness. It is, indeed, provided that on the decease of the widow and both daughters, the income of the estate shall be paid to the three grandchildren, if living, for their respective lives; but if either of the grandchildren be then deceased, intestate, leaving children or issue or a deceased child surviving, such issue shall take equally the part of the estate—meaning undoubtedly the principal—the income of which is given to the deceased parent. This provides for a *pro tanto* distribution of the *corpus;* and if I. Price Cadwallader, who died in 1917 intestate, so far as his power of appointment is concerned, had left issue, which he did not, the issue would have taken their share of the principal. And the will further gives the grandchildren a right of testamentary appointment to dispose of his or her interest in the income 'so long as the same shall be held in trust, and also of her interest' (which may mean his or her interest) 'in the principal thereof, to take effect upon the partition of my estate.' By 'partition of my estate,' the testator can only mean its final distribution on the termination of the trust, and as he provides, with apparent care, for the payment of income to the grandchildren for their respective lives, it seems to me clear that the trust continues until the death of the survivor of them; and it will be noted, in this connection, that the gift of the *corpus* to the children or issue of grandchildren above mentioned, taking place on the decease of the wife and daughters, applies only to the case where either of the grandchildren be then deceased intestate. The question then arises, who are or shall be entitled to the *corpus* of the estate on the death of the survivor of the grandchildren? When the question arose as to the disposition of Isaac Price Cadwallader's share of the income after his death

Price's Estate.

intestate, it was held, as above stated by Judge Lamorelle, that the testator, Isaac C. Price, died intestate with respect thereto, and distribution thereof was awarded to Mary P. C. Fourl and Isaac Price Ewing, and I am not disposed to differ with that conclusion, even if it were to be now decided; but it does not follow that the principal must be awarded in the same way, for the testator, curiously enough, in the final words of the paragraph, gives either of his grandchildren the right to dispose by will, duly attested, of his or her interest in the income of the estate, and also of her interest in the principal, to take effect upon the partition of the estate. When the testator said 'her' interest, he perhaps meant his or her, for in the collocation of the words no reason is apparent why he should restrict this power to females; but another question is, what does the testator mean by 'interest in the principal?' for no specific interest in the principal is given elsewhere in the will, and the power to dispose of the interest is restricted to be executed by a will duly attested. See Price's Estate, 27 Dist. R. 561.

"For the purposes of this adjudication, however, I shall assume that Mary P. C. Fourl and I. Price Ewing are possessed of vested interests in remainder on the termination of the life estates, and the question, then, is whether they can, under our decisions, terminate the trust. In my opinion, they cannot, for the income of Mary P. C. Fourl is subject to the provisions against alienation. Even an active trust may be terminated by the consent of all persons interested in the income and *corpus*, provided they are of age, *sui juris*, and that their interests are not subject to a spendthrift trust or the like: Twining's Appeal, 97 Pa. 36; Malatesta's Estate, 29 Dist. R. 113, above cited. Nor is it possible for I. Price Ewing to have the trust terminated as to one-half, his income not being subject to the spendthrift trust, for Mary P. C. Fourl is entitled, not to the income of one-half, but to one-half of the income of the whole—a familiar distinction: Wilen's Appeal, 105 Pa. 121; Aubert's Appeal, 119 Pa. 48, and Ford's Estate, 185 Pa. 420. If it were not for the spendthrift trust imposed upon Mary P. C. Fourl's share of the income, the trust might perhaps be terminated: Warne's Estate, 27 Dist. R. 428; but as it is, she is prevented by that trust from agreeing to its termination. This principle applies even if it be conceded that her accrued shares of income are not subject to the trust, as to which her counsel cited Livezey's Estate, 245 Pa. 230, and other cases; for whether her undivided interest in the income be one-half or only one-tenth, the principal would have to be kept intact, and, after all, the question of accruer depends upon the intention of the testator: Small *v.* Small, 242 Pa. 235; Mullen's Estate, 270 Pa. 321; and in this case I am disposed to think that the testator intended the additional income freed by the deaths of Mary C. Ewing, Eliza P. Cadwallader and Harriet B. Price should be subject to the trust. The income distributable on the death of Isaac Price Cadwallader passes under the intestate laws, and while this income is not subject to the spendthrift trust, and Mary P. C. Fourl might assign it, yet this does not affect the question, inasmuch as the doctrine of Wilen's Appeal would still apply. Notwithstanding the very thorough argument of counsel for Mrs. Fourl and Isaac Price Cadwallader, I do not see my way clear to grant their petition."

*Henry S. Borneman, Winfield W. Crawford* and *Charles W. Fourl* (of the California Bar), for exceptants.

*Robert W. Finletter*, for Commonwealth.

LAMORELLE, P. J., July 23, 1923.—The controversy arises over the proper construction of the eleventh item of the will of Isaac C. Price, who died in

3 D. & C.

Price's Estate.

1889. Of the six *cestuis que trust* named in the will, his wife, his two daughters and his three grandchildren, two alone survive, Isaac Price Ewing, son of Mary Ewing, a daughter of the first wife of testator, and Mary C. Fourl, surviving child of Eliza P. Cadwallader, a daughter of testator also by his first wife. They claim the right to have the trust terminated, in that, from their viewpoint, no legal reason exists for its continuance. They are entitled to all of the income, either under the will or because of an intestacy as to a certain fraction of such income, and as there is no gift of principal, their argument is that the *corpus* should forthwith be divided between them. Their contentions are set forth in earnest arguments, both oral and in briefs, submitted at the two hearings. The solution of the problem is by no means simple, yet, after a thorough consideration of their claims, we are not convinced that the auditing judge, who wrote an exhaustive and extended adjudication, erred in his conclusion that the trust continued.

In the circumstances we deem it advisable, in a more or less concise way, to supplement what has already been said in the adjudication.

The entire residuary estate was given to three trustees, who were directed to divide the net income into ten equal parts; three of these parts were given to the widow for life, two other parts, four in all, to each of the two daughters, but without limit in words as to time, and the remaining three parts to three grandchildren, by name, each for life. When, and as, the daughters died, the three grandchildren named took their respective shares of income in "the same proportions." Thus, by necessary inference, the daughters' interests were limited to their lives; this is further emphasized from the fact that their shares of income were to be paid into their own hands and that a spendthrift clause was added. The two daughters are dead; since their death their shares have been paid in the proper proportions to the three grandchildren. Isaac P. Calwallader, one of the three, also is dead. By his will he attempted to dispose of his share of the income, for, although such income was given him for life, he was authorized to dispose of it for the life of the trust. The will was not executed in accordance with the provisions of the will of the original testator, and we held in Price's Estate, 27 Dist. R. 561, that the attempted exercise of the power of appointment was invalid. The will of Isaac C. Price, the original testator, made no disposition of this income in event of the death of his grandson, Isaac P. Cadwallader, except in event of the grandson's dying leaving descendants him surviving. As there were no such descendants, we held, in the above recited case, that there was an intestacy as to thus much of the income, seven-thirtieths of the whole, as of the date of the death of the original testator in 1889. The result of this ruling was that the two present claimants, because of intervening deaths and devolution, became entitled to the same in equal shares.

The present accounting is had because of the death of the widow, Harriet B. Price, which occurred Dec. 9, 1921. On her decease, the two daughters being then dead, the will directed that the entire net income should be paid to the three grandchildren, if then living, in equal shares, for and during the terms of their respective natural lives. If, however, any of them should be then deceased, intestate, leaving lawful issue alive, such issue was to take the share of the principal as to which the deceased parent was given the income for life. At the time the widow died one of the grandchildren, Isaac P. Cadwallader, as before stated, was deceased, and, although he did not die intestate, he left no descendants him surviving. The auditing judge ruled that the two living grandchildren, the present claimants, took all of the income.

This, no doubt, they do, but it would seem that they take because there is an intestacy in the original testator of whatever share of income Isaac P. Cadwallader would have taken had he survived his grandmother. The result is the same in either case.

We have, therefore, this situation: Isaac P. Ewing entitled to one-third of the income under his grandfather's will, Mary C. Fourl entitled to a like third, and the two of them entitled each to a sixth, making up the remaining third, because of the intestacy of original testator, their grandfather, as to one-third of the entire net income of the estate.

We thus lead up to the important question, when does the trust terminate?

As bearing thereon, we quote the concluding sentence in the eleventh item of the will: "Either of my said grandchildren may by last Will or Testament or writing in the nature thereof duly attested dispose of his or her interest in the income of my estate so long as the same shall be held in trust and also of her interest in the principal thereof to take effect upon the partition of my estate."

As we have said before, while there is no gift of the principal, it would seem clear that the intention was to defer distribution until after the death of the three grandchildren, except that if any one of them should die intestate in the lifetime of the widow leaving lawful issue, such issue might then demand such grandchild's share. Apparently the trust as to one-third terminated on the happening of this contingency, but the one grandchild who died did not die intestate, nor did he leave descendants. The power given to the grandchildren to dispose of income provided that the legatee should have the same "so long as the same was to be held in trust," and the legatee should have the share of the principal, which was to take effect upon the partition of the estate. Partition of the estate manifestly referred to ultimate distribution, and it would, therefore, seem that the trust must continue as long as any reason therefor existed.

While from the language of the will it would appear that the three grandchildren may have vested interests in the principal, at least in event of their surviving the widow and the two daughters of testator, because each might by will dispose of his or her interest in the income of the estate, and also of his or her interest in the principal, it does not necessarily follow that the right of disposition was intended to effect a termination either in whole or in part of the trust. In fact, the wording of the particular paragraph justifies a different conclusion. It negatives a purpose to terminate the trust as to income while any of the grandchildren named in the will are alive, and also implies that, no matter what the then distribution of income might be, or who should be in receipt of the same, the principal should remain intact and as an entity until the time was ripe for a division thereof, which time, so fixed, was, in effect, the death of the survivor of the three grandchildren.

The auditing judge was undoubtedly correct in his application of the principle of Aubert's Appeal, 119 Pa. 48; Wilen's Appeal, 105 Pa. 121, and kindred authorities. In Aubert's Appeal, 119 Pa. 48, a trust was created as to one-half of the estate, the income being payable to a brother and sister, share and share alike, for life, with substitution of children in event of the death of *either*, and with distribution of principal upon the death of *both;* the brother died without issue, and the sister being alive, the court refused to divide the fund and to award the one-half. Mr. Justice Paxson (page 53), delivering the opinion of the court, said: "As was said in Wilen's Appeal, 105 Pa. 121, we cannot say that a moiety of the income of the whole may not be more valuable to the surviving life-tenant than the whole of the income of a moiety. In any event, it is enough for us know that the testator, in clear

3 D. & C.

language, designated the time when distribution should be made, and it is not our province to change his directions." In Wilen's Appeal, 105 Pa. 121, the court upheld a family agreement, wherein the widow was to have one-half of the entire income for life, and other parties in interest sought thereafter to have one-half of the principal distributed and to give her *all* of the income from the other one-half of the principal. .

In the instant case the entire estate was to be held by the trustees, among other things, to pay the shares of the two daughters and the one grand-daughter "into their own hands respectively upon their own receipts," and not to be subject to their debts and without power to sell or assign. Thus were spendthrift trusts created. There can, therefore, be no doubt that the trust as to one-tenth of the income in the granddaughter, Mary Cadwallader (now Fourl), is impressed with such trust, and, in our opinion, this applies also to the shares in income she takes because of the death of her grand-mother (Harriet B. Price, widow of testator) and the death of her mother (Eliza P. Cadwallader, daughter of testator). This follows from the word-ing of the will: "The amounts herein directed to be paid to each of my said daughters and to my said granddaughter, I direct," shall not be subject to their debts. This is found in the item creating and defining the terms of the trust hereinbefore referred to. The doctrine of "accrued shares" is one of intention; it may occur by express direction or upon clear inference. The inference, however, is not one of law, but of language on the particular case. Here we have both. The "amounts to be paid" meant all sums original and to accrue. This will is readily distinguishable from that in Mifflin's Estate, 232 Pa. 25, in that there were no "original shares" given grandchildren, and, hence, nothing to accrue.

Admittedly there is no spendthrift clause as to the share of income which Isaac Price Ewing, the other living grandchild, receives, and as far as his share is concerned, there is no distinction to be drawn between the part he takes by the will and that which he received because of the death of Isaac Price Cadwallader and the ensuing intestacy as to that share of income. All that he does get, however, is subject to and controlled by the dominant thought of testator that the trust should endure until the time fixed for a division of the principal.

As we view the matter, it can make no difference who is now entitled to income, who may be ultimately entitled to principal, or what share of the estate passes from the original testator under the will or under the intestate law, or whether his widow, Harriet B. Price, takes any further share (as to which see Jackson's Estate, 126 Pa. 105; Rogers's Estate, 24 Dist. R. 824), or whether a legatee under the will of Isaac Price Cadwallader may receive as part of his own estate that which he attempted by appointment to give her as part of his grandfather's estate. The one question which we decide is that the trust as to principal may not now, either in whole or in part, be terminated.

And for that reason all exceptions, original and supplemental, are dis-missed and the adjudication is confirmed absolutely.