## Card's Estate (No. 1).

70

Argued September 28, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Lawrence D. Blair,* with him *Moorhead & Knox,* for
appellants.

*C. L. Wallace,* with him *John O. Wicks, Robert R.
Wertz* and *Weller, Wicks & Wallace,* for appellees.

*Lawrence P. Monahan,* for appellee, Trustee.

OPINION BY MR. JUSTICE STERN, November 27, 1939:
These appeals are concerned with the construction
of the will of William W. Card. He died in 1903, leav-
ing a widow, Maria L. Card, two sons, William Dins-
more Card and Henry Stone Card, a married daughter,

Nellie C. Moore, two children of the latter, Harriet Dinsmore Moore (now Linder) and William Card Moore, and a minor daughter, Ruth Card, who by subsequent marriage became Ruth Card Briggs. Decedent's will, after making certain bequests and devises, left the residuary estate to the Safe Deposit and Trust Company of Pittsburgh (now Peoples-Pittsburgh Trust Company) in trust to pay one-third of the income to testator's widow for her life, an annuity of $3,000 to his son Henry and an annuity of equal amount to the latter's wife, Grace, with a provision that if Henry died without issue his wife should thereafter be paid an annuity of $5,000. The will then proceeds as follows in regard to the balance of the residuary estate:

"Fourth: . . . . . . .

"(c.) Subject to the aforesaid provisions for my wife, and son Henry and his wife Grace.

"One-third (⅓) of the net income not necessary to meet said provisions, to my daughter Nellie C. Moore, widow of Daniel A. Moore, during her natural life, and after her death to her chilen, Harriet Dinsmore Moore and William Card Moore, equally for their joint lives, or the survivor of them, should either the said William C. or Harriet D. Moore die survived by his or her lawful issue, such issue shall receive the share of the net income their parent would have received if living. Upon the death of my said daughter Nellie, and her children Harriet D. and William C. Moore, the one-third (⅓) of the corpus of my estate and the accrued income thereon, shall vest absolutely in all the children of my said daughter Nellie and their lawful issue, per stirpes, including such children as may hereafter be born to her, in case she should marry again.

"(d.) Subject to the aforesaid provisions for my wife, my son Henry, and his wife Grace.

"One-third of the net income not necessary to meet said provisions, to my son William Dinsmore Card during his life, and upon his death one-third (⅓) of the

corpus of my estate and the accrued income thereon shall vest absolutely in his children or lawful issue. Should his wife Sadie Tracy Card survive her husband William Dinsmore Card, and they have no lawful issue, then the sum of Five thousand ($5000.) Dollars shall be paid to her in quarterly payments of Twelve hundred and fifty ($1250.) Dollars, during her lifetime.

"(a) Subject to the aforesaid provisions for my wife, my son Henry and his wife, Grace.

"One-third of the net income not necessary to meet said provisions, to my daughter Ruth Card during her life, and upon her death, one-third ($\frac{1}{3}$) of the corpus of my estate and the accrued income thereon shall vest absolutely in her children or lawful issue of such, per stirpes.

"Fifth:—Should any of my children, William D. Card, Henry S. Card, Ruth Card, and Nellie C. Moore, or Nellie's said two children, Harriet D. and William C. Moore, die without leaving lawful issue, then living, the portion of the corpus otherwise intended for the issue of such decedent, shall continue to be held upon the same trust as hereinbefore mentioned, and the income of such of the five beneficiaries, herein above last expressly named, as shall survive such decedent, shall be proportionately increased and with respect to the corpus of my estate, the shares thereon [sic] of the issue who may be living at the time of the death of any one of said beneficiaries shall be proportionately increased, per stirpes."

In 1905 testator's daughter Nellie C. Moore died, leaving her two children, Harriet Dinsmore Moore (now Linder) and William Card Moore, to survive her. Testator's son Henry Stone Card died in 1913 without issue but survived by his widow, Grace (who by remarriage has become Grace Card Porter). Testator's daughter Ruth Card Briggs died in 1926, leaving three daughters, Dorothy Briggs Klappert, Nancy Briggs Beiser, and Barbara Briggs, a minor, of whose estate

**74**

John B. Hollister is guardian. It is these three children of Ruth Card Briggs who are the appellants in the present proceedings. Testator's son William Dinsmore Card died in 1936, without issue but survived by his widow, Sadie (otherwise known as Sada) Tracy Card. The widow of testator, Maria L. Card, died in 1938.

The death of the son William Dinsmore Card raises the issue involved in the present appeals. Since his death the trustee has regularly paid one-half of the income which William Dinsmore Card had received during his lifetime to the two children of Nellie C. Moore, and the other half to the three children of Ruth Card Briggs, and when it filed the present, its first, account, the trustee requested that distribution of income on hand should be made in the same way. The orphans' court, however, adjudged that such payments were improper and that all the income formerly payable to William Dinsmore Card was payable, after his death, to the two Moore children. The court therefore decreed that the trustee should reserve the amount of such improper payments from the future income of the Briggs children payable from the part of the corpus of the estate accruing to them after the death of their mother. The court further decreed that an advancement made by the trustee to Dorothy Briggs Klappert of $8,000 from the corpus of the estate should be returned, holding that none of the Briggs children was entitled to any present distribution of principal. The court also directed that the entire corpus of the trust estate should be retained by the trustee in order to insure the continuance of sufficient funds to pay the annuities of Grace Card Porter and Sadie Tracy Card.

Appellants challenge the correctness of each and every part of this decree. They contend that one-half of the portion of the corpus "otherwise intended for the issue" of William Dinsmore Card became vested in them upon his death without issue, and, therefore,

that the income previously paid to him belonged, after his death, one-half to them and one-half to the Moore children; that the annuity of Sadie Tracy Card should be charged, not against the general income of the estate, but only against the income previously paid to her husband; that the trustee should retain in its hands sufficient of the corpus of the estate to assure the payment of the annuity to Grace Card Porter, but that, subject to such retention, the one-third of the corpus which vested in them upon the death of their mother, Ruth Card Briggs, (and from which they are now receiving the income) should be distributed to them.

The problem of construction of the will arises from the poor phrasing of its fifth paragraph. Appellees, the two Moore children, take the position that, according to its literal wording, the death, without issue, of any of the six beneficiaries named therein was to result in an increase of income of those of the remaining five who should survive such decedent, and, since appellees are the only two such survivors of William Dinsmore Card, all income previously payable to him should now be paid to them during their lives, while the Briggs children, not being expressly named in the paragraph, are not entitled to any increase of income as the result of their uncle William's death. In our opinion this point of view represents a misconception of what testator quite evidently intended. If such a literal interpretation were to be adopted it might mean that if Henry had survived the death of his brother William he would have been entitled, in addition to his fixed annuity, to a share of the income previously payable to William; or, if Nellie C. Moore had so survived, her two children would have shared in such income with her. Such possible results were obviously not within the intent of testator. The paragraph must be examined from a broader point of view and its controlling purpose ascertained.

For reasons best known to himself,[1] testator made a special provision for his son Henry, cutting him off with a comparatively small annuity,[2] but to each of his other three children, Nellie, William and Ruth, he gave an equal one-third of the net income of the estate (subject to a provision for his widow and to the annuities for Henry and Henry's wife) ; he also provided that upon the death of each of these three children one-third of the corpus of the estate should vest absolutely in such child's children or lawful issue, per stirpes, the only modification being that, in the case of his daughter Nellie, he provided that after her death the income previously paid to her should be paid to her children, Harriet Dinsmore Moore and William Card Moore for their lives, and upon their death one-third of the corpus of the estate was to vest absolutely in all the children of Nellie[3] and their lawful issue, per stirpes. The reason for this special arrangement apparently was that Nellie's two children were the only grandchildren of testator who had then been born and he desired to protect them by trusteeing their share of the estate just as he had done in the case of his own children; to have made similar provision for a vesting of corpus after the death of then unborn grandchildren might have involved the rule against perpetuities. Be this as it may, the will indicates that it was the general intent of testator that, although the two Moore children were to receive their inheritance by way of income whereas other grandchildren would receive the corpus outright, each stirpital

---

[1] "The discrimination against my son Henry has been made with careful consideration, and in my opinion for his welfare."

[2] The sixth paragraph of the will, however, provided that Henry might be given a share of the income equal to that of the other three children if at some later period testator's wife, the other children, and the trustee, should so decide.

[3] This provision was intended to include any children that might be born to Nellie in case she should marry again,—a possibility that did not materialize.

line was to enjoy an equal portion of the estate. Nor is there anything in the phraseology of the fifth paragraph inconsistent with this fundamental purpose. On the contrary it is there expressly stated that, upon the death, without issue, of any of the named beneficiaries, the portion of the corpus otherwise intended for the issue of such decedent should continue to be held upon the *same trust* as thereinbefore mentioned, which is equivalent to saying that the portion of the corpus theretofore allocated to the issue of such decedent should be distributed between the two other branches of the family in the manner provided in the fourth paragraph of the will for the trust estate generally. Passing to each of such other branches, an accretion thus resulting would take the different forms provided in the case of the original trust; thus the portion due to the Moore branch would pass by way of life estates to the two named Moore children and by way of corpus to their issue, whereas, in the case of the Briggs branch, the children of Ruth Card Briggs would succeed immediately to the corpus upon the death of their mother just as they did in the case of the one-third of the corpus of the estate originally given to them. It is to be noted that the fifth paragraph of the will does not dispose specially of the income previously paid to a decedent child but of the complete share of such child, the surviving income-beneficiaries having their incomes proportionately increased and the surviving corpus-beneficiaries having their shares of the corpus proportionately increased. Among the latter are the Briggs children, they being "issue who may be living at the time of the death of any one of said beneficiaries," and, therefore, at the same time that appellees became entitled to a proportionate increase of income from the Moore share of William Dinsmore Card's part of the estate appellants became entitled to a proportionate increase of corpus as the Briggs share thereof. This interpretation

is one that not only makes for stirpital equality but is in harmony with the general framework of the will.

It follows from what has been said that, just as when Ruth Card Briggs died there was immediately vested in appellants, her children, one-third of the corpus of the estate, so when William Dinsmore Card died there was immediately vested in them one-half of the share in the corpus of the estate that would have vested in his issue had there been any. Appellants' interest was thus increased to one-half of the entire corpus, and accordingly they were entitled thenceforth to receive the income from that proportionate part of the estate, subject, of course, to the prior charges thereon provided for in the will.

There remains the question whether, having this absolute vested interest in one-half of the corpus of the trust fund, appellants are entitled to receive their share or any part of it by way of immediate distribution. They admit that, before any distribution can properly be made, enough of the corpus must be retained in the hands of the trustee to insure payment of the annuity to Grace Card Porter, Henry's widow, since this annuity is given by the will a status of priority over the interests of Nellie C. Moore, William Dinsmore Card and Ruth Card Briggs.[4] It is well established that the court may reserve a sufficient amount of principal to meet the requirements of annuity payments without withholding all the rest of a large estate from distribution: *Harbin v. Masterman,* 1 Ch. (1896) 351; *Sears v. Hardy,* 120 Mass. 524, 541, 542; *Fidelity Union Trust Co. v. Birch,* 121 N. J. Eq. 122, 186 Atl. 816. In the case of the annuity for Sadie Tracy Card the will does not provide for any priority, and it would seem fair to conclude that this annuity was to come from the share of

---

[4] The reason for this preference was, no doubt, to compensate Henry for being deprived of the proportionate share in the estate which was given to each of testator's other children.

the estate from which the income had been payable to her husband, William Dinsmore Card; any other interpretation would give this daughter-in-law a status ahead of that of testator's own children, and indeed, if the income from the entire estate dropped to less than $15,000 per annum, a status superior to that which her husband himself would have enjoyed had his life continued; it is not conceivable that testator could have so intended. Accordingly, the share of the corpus of the estate which was intended for the issue of William Dinsmore Card, had there been any, or such portion of it as is fairly necessary for the purpose, must be retained in the hands of the trustee for the assurance of the payment of the annuity to Sadie Tracy Card in addition to the obligation of such portion, in common with the rest of the estate, to support the annuity in favor of Grace Card Porter.

Subject, as thus stated, to the reservation of corpus to the extent necessary to protect the two annuitants, are appellants entitled to a present distribution of the share of the corpus vested in them, or must the entire principal of the trust estate remain intact in the hands of the trustee because of the fact that appellees are entitled, during their lives, to one-third of the net income of the estate? Appellees argue that in a well-known line of cases[5] it has been held that "where there is a gift of a fractional share of income from an entire estate for a definite period of time, the whole principal must be preserved intact for the payment of that share of income so long as the limitation is to last, since it cannot be said that a share of income from the entire estate is not more valuable than the income from a

---

[5] *Wilen's Appeal,* 105 Pa. 121; *Aubert's Appeal,* 119 Pa. 48; *Getz's Appeal,* 125 Pa. 611; *DeSilver's Estate,* 142 Pa. 74, 78; *McCallum's Estate,* 211 Pa. 205, 208; *Lockhart's Estate,* 306 Pa. 394, 405.

proportional share of the principal" (*Lockhart's Estate*, 306 Pa. 394, 405). An examination of those cases, however, reveals that in each of them the time for distribution of corpus fixed by the will or other instrument in question had not arrived, and that if an immediate distribution of principal had been ordered by the court it would have been contrary to the expressed intention of the testator, which, of course, is always the controlling guide. In the present case there is no express provision in regard to distribution of corpus, nor does there appear to have been any desire on the part of testator that the trust should continue until the death of all the income-beneficiaries. On the contrary, he provides that, as each of the life tenants dies, a corresponding share of the corpus of the trust should thereupon "vest *absolutely*" in the children or lawful issue of such decedent —a phrase which was apparently intended to denote a vesting in possession as well as in interest. Moreover, the general plan of the will indicates that the issue in each branch of the family were to be entitled to receive their proportionate share of the corpus of the trust estate at the conclusion of the life interest or interests provided for that particular branch. It would seem, therefore, to be wholly consistent with the terms of the will, and carrying out testator's implied intention, to permit the present distribution to appellants of the portion of the corpus of the trust estate to which they are entitled, the trustee, however, to retain thereout what, in the opinion of the court below, is reasonably necessary (together with a similar proportional retention from the part of the corpus allocated to the Moore branch of the family) to insure payment of the annuities as hereinbefore discussed.

Summarizing our conclusions, they are (1) that upon the death of William Dinsmore Card the one-third of the corpus of the estate intended for his issue, had there been any, became subject to the terms of the trust as

provided in the fourth paragraph of testator's will, the result being that one half of this one-third vested immediately thereupon in appellants, and the other half of the one-third passed to appellees in the form of income thereon for their lives and upon their deaths will vest in their lawful issue, per stirpes; (2) that the court below was in error in ordering the trustee to reserve from future income payable to appellants sufficient to reimburse appellees for the income paid to appellants from their increased share in the estate resulting from the death of William Dinsmore Card, and in directing distribution to appellees of such income previously paid to appellants; (3) that the court below erred in its refusal to distribute to appellants the one-third of the corpus of the estate to which they became entitled by reason of the death of their mother, Ruth Card Briggs, less such proportionate share of this one-third of the corpus as the court may find to be reasonably necessary to pay the annuity to Grace Card Porter; (4) that the court below erred in its refusal to distribute to appellants one-sixth of the corpus of the estate otherwise intended for the issue of William Dinsmore Card, less such proportionate share of this one-sixth of the corpus as the court may find to be reasonably necessary to pay the annuities to Grace Card Porter and Sadie Tracy Card; and (5) that the sum of $8,000 advanced to appellant Dorothy Briggs Klappert from the corpus of the estate should be debited to the share of the corpus to which she may be entitled in the distribution of principal as herein provided.

The record is remanded to the court below with directions to amend the decree in accordance with this opinion; costs to be paid out of the estate.