## Boswell's Estate

Before Stearne (acting P. J.), Sinkler, Klein, Bolger, and Ladner, JJ.

*John B. Gest,* for exceptants.
*Louis B. Runk,* contra.

LADNER, J., April 5, 1940.—By paragraph four of her will, decedent bequeathed one fourth of her estate in trust to pay the income to her daughter-in-law, Elizabeth R. Boswell, and her two children, Mary R. Boswell (afterwards Collins) and John Iverson Boswell, in equal shares during their lives. Then follow the provisions concerning which the controversy here arises, viz.:

"At the death of one, to pay the income equally to the other two, at the death of two to pay the survivor the entire income; at the death of all three to divide the principal into three equal parts, one of which shall be assigned to the estate in trust for my daughter, Sarah A. Boswell, and one to each of my two sons, William L. Boswell and James I. Boswell, their respective heirs, executors, administrators and assigns; provided, that if at the time of the decease of either of my said grandchildren, there shall be living husband, wife, child or children of such deceased grandchild, such husband, wife, child or children shall receive the principal of the sum whose interest previously was paid to such decedent."

Decedent's daughter-in-law, Elizabeth R. Boswell, was the first to die. Then followed decedent's granddaughter, Mary R. Boswell Collins, whose death is the occasion for this accounting.

At the audit, the husband of Mary Boswell Collins claimed to be immediately entitled to one half of the prin-

cipal of the trust fund. His claim was denied by the auditing judge, who ruled that the trust must continue so that the surviving life tenant might receive the whole of the trust income during his life. Thereupon the exceptions before us followed. It seems to a majority of the court that the learned auditing judge is clearly right and little can be added with profit to what he has so well said on this point in his adjudication. We, therefore, confine ourselves to consideration of the argument pressed by exceptants' counsel, namely, that the proviso near the end of the paragraph must be read as though it were a condition annexed to the successive express gifts of the income. We cannot so read it. In our opinion, testatrix is there speaking of the principal of the trust and we cannot regard it as controlling the distribution of its income.

Testatrix, in the first part of the paragraph, creates the trust for the purpose of paying the income to the three named life tenants. With meticulous care she specifies, "at the death of one, to pay the income equally to the other two, at the death of two, to pay the survivor the *entire* income" (italics supplied). This necessarily fixes as the duration of the whole trust the life of the last survivor. That the trust is not to end before that time, even pro tanto, is emphasized by the words that follow, viz.: "At the death of three, to divide the principal into three equal parts". Then follows the direction to assign one part to each of the three trusts set up in earlier paragraphs of the will to testatrix's three children. The proviso which follows is but a substitutionary bequest of these three shares of the principal by which the spouses and children of the two grandchildren are substituted for testatrix's own three children.

The words "provided that if at the time of the decease of either of my said grandchildren there shall be living husband, wife, child or children of such deceased grandchild, such husband, wife, child or children shall receive the principal of the sum whose interest previously was paid to such decedent", merely fix the condition under

which the substitution is to take place, and the formula by which the amount is to be ascertained which each of the substituted legatees is to receive. Their respective shares are to be measured by the amount on which the deceased grandchild previously received the interest at the time of that grandchild's death. So construed, the proviso is not to be regarded as limiting the duration of the whole trust and requiring the earlier termination thereof if the grandchildren left children or spouses, but as merely fixing the time *when* the substitutionary gifts shall vest and the amount thereof.

It has been consistently held that express words fixing the duration of a trust are not to be overcome except by clear and unequivocal language. So in Grothe's Estate, 229 Pa. 186, the duration fixed by express language was adhered to, though it resulted in a finding that a testator died intestate as to income previously paid to a beneficiary before the time of dividing the principal had arrived. And in Potter's Estate, 36 D. & C. 81, a case which is the converse of this, we held we could not escape terminating a trust at the time expressly fixed by decedent, even though other language might have been construed implying the continuance thereof for the benefit of the survivor; see also the line of cases cited in the recent case of Card's Estate (No. 1), 337 Pa. 69, at page 79, a case distinguished from this case on the ground that testator there had not in express language fixed the time of the trust's termination, but which recognizes the principle that where there *is* an express provision fixing the time of distribution of the corpus it is "a controlling guide" to testator's intention.

We hold, therefore, that the learned auditing judge was right in holding the trust must continue so that the surviving grandchild may receive the entire income during the term of his life.

In answer to the argument that such construction as to the income now might logically lead to an unequal or unjust distribution of the principal at the time of the

surviving life tenant's death because of the wording of the phrase giving to the substitutionary legatee "the principal of the sum whose interest previously was paid to the decedent", it is enough to say that this question is not before us, and therefore need not, and ought not, now be passed upon.

It is true that the learned auditing judge did pass on this question and ruled that claimant had a vested interest in one half of the corpus distributable to him at the surviving life tenant's death. We feel, however, that having decided the trust continued, the question of how the corpus should be distributed when the trust ended was, strictly speaking, not before him. We think it better to follow our precedent in Dutilh's Estate, 1 D. & C. 612, 613, 80 Pa. Superior Ct. 134, a case in many respects similar to this, where Judge Gest said:

"It is perhaps sufficient to say that this question does not arise at the present time, and its solution cannot now be determined: Willard's Appeal, 65 Pa. 265; a rule that has always been followed in this court: Hano's Estate, 8 Dist. R. 353; Glanding's Estate, 15 Dist. R. 985; Wears's Estate, 25 Dist. R. 30."

The wisdom of this precedent becomes apparent from the subsequent history of that estate, for when the time for distribution of the principal did come, the fear of unequal distribution of principal did not materialize; see Dutilh's Estate, 286 Pa. 389. So here we cannot now with certainty say that when the surviving life tenant dies he will leave a wife, child, or children; if not, the question will not arise, but if it does, the construction urged is clearly arguable. With the concurrence of the auditing judge, we refrain from further discussion so as to leave the question open.

The exceptions are dismissed and the adjudication confirmed absolutely.

STEARNE, J., dissenting.—I do not agree with the construction of this will as made by the majority. In my

view there *is* an express provision fixing the time of distribution of part of the corpus.

Testatrix contemplated the decease of her two named grandchildren, *with and without* surviving "husband, wife, child or children". Should either grandchild die without leaving a husband the income passes to the other life tenants until the death of the survivor, when the principal is given to testatrix's children. However, if such grandchild leaves a husband, then such husband "shall receive the *principal* of the sum whose interest previously was paid to such decedent".

A grandchild has died, and did leave a husband. In my opinion, the husband, in most clear and unequivocal language, is given the principal upon which the grandchild enjoyed the income.

There is no difference in principle between a gift to A for life, with remainder to A's husband, should he survive, otherwise to B, and a gift to A for life, with remainder to B, *provided*, if A leaves a husband surviving, then the principal passes to such surviving husband. A's husband takes under either phraseology.

There are cases where a gift of a fractional share of income from an entire estate may necessitate the retention of the entire principal until the death of the surviving life tenant. This is because of the express or implied intent of the testator. Aubert's Appeal, 119 Pa. 48, cited by the auditing judge, is such a case. To this may be added Wilen's Appeal, 105 Pa. 121, Getz's Appeal, 125 Pa. 611, DeSilver's Estate, 142 Pa. 74, McCallum's Estate, 211 Pa. 205, and Lockhart's Estate, 306 Pa. 394.

This principle, however, is not applicable where an intention is clearly expressed to distribute a share of principal upon the death of a life tenant: Tripp's Estate (No. 1), 202 Pa. 260. This distinction is discussed in Card's Estate (No. 1), 337 Pa. 69, at pages 79, 80. An illustration of this distinction appears in our own court, in Potter's Estate, 36 D. & C. 81, where a majority of the court decided that the will revealed an intention to dis-

tribute immediately a share of the principal, despite other language indicating a contrary intent.

Because of the express provision directing distribution at this time of part of the corpus, I would give full effect to the plain and unequivocal terms of the will, and would not undertake, by use of canons of construction, rules of grammar, surmised testamentary intent, or otherwise, to rewrite the testamentary instrument.

The exceptions, in my opinion, should be sustained.

Sinkler, J., joins in this dissent.