Wanamaker's Estate.

Argued April 21, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*William A. Gray,* with him *Harry J. Alker, Jr., Frank F. Truscott, William N. Trinkle* and *Ralph F. Colin,* for appellant.

*Earl G. Harrison,* with him *Edward G. Taulane, Jr., Frederick B. Smillie, Robert C. Walker* and *Robert T. McCracken,* for trustees, appellees.

*Geo. P. Orr,* of *Orr, Hall & Williams,* for distributees, appellees.

*Joseph Gilfillan,* with him *Franklin L. Wright,* for guardian, appellee.

*Aaron S. Swartz* and *Joseph Gilfillan,* for appellee.

*Russell J. Brownback,* in propria persona, guardian ad litem, appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 19, 1939:

This appeal by the ancillary administrator c. t. a. of the Estate of John Wanamaker, Jr., challenges the validity of parts of the will of his father, Rodman Wanamaker, on the ground that they violate the rule against perpetuities, in establishing a trust of the capital stock

of the corporation, John Wanamaker Philadelphia. The amount involved is large. Rodman Wanamaker was the owner of all of the capital stock of John Wanamaker Philadelphia and in the decree of distribution before us it was awarded to the trustees at a valuation of $36,091,321.

Rodman Wanamaker died March 9, 1928, survived by three children, John Wanamaker, Jr., Fernanda W. Munn and Marie Louise Munn, and five grandchildren, John Rodman Wanamaker and Fernanda Wanamaker, children of John Wanamaker, Jr., Rodman Arturo Heeren, son of Fernanda W. Munn (formerly Heeren) and Gurnee Munn, Jr., and Fernanda Munn, children of Marie Louise Munn. John Wanamaker, Jr., died November 29, 1934, a resident of the State of Nevada, where his will is probated. The appellant, Peoples National Bank of Norristown, was appointed ancillary administrator c. t. a. of his estate in this jurisdiction.

Rodman Wanamaker left a will, dated October 6, 1923, and three codicils, together with a supplementary letter, which was probated as part of his will. The documents are quite lengthy. Three trusts were created; with two of them we are not concerned.

The clause in the will which gives rise to the questions to be determined is the eighth. In the third clause, he set forth that he was the owner of all the shares of the capital stock of John Wanamaker Philadelphia, and directed that they should be held in trust by trustees whom he named for certain uses, not necessary to be detailed, the income to be paid to his three children during their lives, subject to spendthrift provisions. "Eighth. In further Trust, on the part of my said Trustees, to hold said Capital Stock, and all dividends, income or money derived therefrom, subject to the provisions herein previously contained, for the benefit of all the child, or children of all the children of my three (3) children, for and during the term of their natural life, or lives, of such of my said grandchildren, and

for the period of twenty-one (21) years after the date of the decease of the last surviving grandchild. In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children, then said stock, or the proceeds which may be derived therefrom, to be equally divided, share and share alike, into as many parts as there may then be great-grandchildren of mine, surviving, and the descendant of any great grandchild, then surviving, the latter to receive and enjoy, subject to the provisions heretofore stated such share as their parent, or parents, would have enjoyed, had they then not been deceased." We conclude, as did the learned judge of the court below, that the words "of all the children" following the words "of all the child, or children" are a repetition and that the phrase should read, "for the benefit of all the child, or children, of my three children, for and during the term of their natural life or lives, of such of my said grandchildren, and for the period of twenty-one years after the date of the decease of the last surviving grandchild."

The court below further pointed out in its adjudication that the words, "In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children" are obviously only a repetition of the period that the trust is to endure, and that the words in the last quotation "of my children" following "of the last surviving grandchild" create some confusion until the remainder of the eighth item is read, that it is characteristic of the slovenly method of the scrivener to put these two phrases together, that isolated, it might be argued testator meant his great grandchildren (his children's grandchildren), but, considering all the eighth item and the other pertinent ones, he intended this to mean his grandchildren.

The court then took up the question whether, when testator referred to his grandchildren, he intended to in-

clude grandchildren born after his death or only those
living at the time of his death, and concluded that no
positive indication of this could be gotten from the
eighth item, but that when considered with the eighth,
ninth, tenth and eleventh items of the second codicil,
it was evident that testator had in mind his grandchil-
dren living at the time of his death, and no others, and
said, "taking all these parts of the will together this
court is convinced that in the provisions for his grand-
children, testator had in mind the grandchildren he
knew, whom he mentioned by name in the eighth item
of the second codicil, and whom he expected to be liv-
ing at the time of his death, or grandchildren he could
know by their being alive at the time of his death. This
interpretation is borne out by the ninth, tenth and elev-
enth items of the second codicil which show that in his
gifts of life interest, testator had in mind persons he
knew and whom he expected to be alive at the time of
his death. These latter three items support the argu-
ment that the time of vesting could be only after the
death of the survivor of the beneficiaries of the said ninth
and tenth items and the grandchildren of the testator
living at his death, because the life benefits of the said
ninth and tenth items are imposed on the stock trust
by the said eleventh item." The eighth item of the cod-
icil creates yearly annuities, payable out of the stock
trust, of $20,000 for each of his grandchildren, Rodman
Arturo Heeren, John Rodman Wanamaker, Fernanda
Wanamaker, Gurnee Munn and Fernanda Munn. The
beneficiary of the ninth item is Rodman Wanamaker,
2nd, a nephew, who was given an annuity of $20,000 per
year, and of the tenth item is Mary Brown Warburton,
a sister of decedent, who is given an annuity of $100,000
per year. The eleventh item contains spendthrift trust
provisions covering all the annuitants.

The court held the period for distribution of the prin-
cipal of the trust to be twenty-one years after the death
of the last survivor of Mary Brown Warburton, Rodman

Wanamaker, 2nd, Fernanda W. Munn, John Wanamaker, Jr., Marie Louise Munn and such grandchildren of testator as may have been living at the time of his death, and that, therefore, the trust does not violate the rule against perpetuities. We are unable to agree with this conclusion so far as the remainders are concerned. We conclude that the confused language used by the testator defers the vesting of the remainder interests until twenty-one years after the date of the death of the last survivor of his grandchildren as a class, irrespective of whether or not the grandchildren were living at his death. The language used does not limit the life estates to grandchildren living at the death of the testator, but to grandchildren generally. We said in *Hogg's Est.*, 329 Pa. 163, 167, 196 A. 503, "The rule is well established, however, that where there is a bequest to a class its members are determined as of the time appointed for distribution, and it is of no consequence that the testator at the time of the execution of his will, may not have had in mind the individuals who might eventually come to compose such class." Our conclusion is that under the language used, the remainders disposing of corpus are illegal and void: *Kountz's Est., (No. 1),* 213 Pa. 390, 62 A. 1103; *Geissler v. Reading Trust Co.,* 257 Pa. 329, 101 A. 797; *Lilley's Est.,* 272 Pa. 143, 116 A. 392; *Feeney's Est.,* 293 Pa. 273, 142 A. 284; *Scott's Est.,* 301 Pa. 509, 152 A. 560; *Lockhart's Est.,* 306 Pa. 394, 159 A. 874; *Friday's Est.,* 313 Pa. 328, 170 A. 123; *Warren's Est.,* 320 Pa. 112, 182 A. 396.

We are of opinion, however, and so decide, that the trust is valid, at least during the continuance of the life estates of the three children of the testator, now the two surviving children, Fernanda W. Munn and Marie Louise Munn, and during the lives of the grandchildren (because any grandchild would have to be born before the death of its mother) and Mary Brown Warburton and Rodman Wanamaker, 2nd: *Feeney's Est.,* supra. Although the language used by the testator creates ul-

timate remainders in violation of the rule against perpetuities, the whole trust does not fail and the valid portions should be maintained. In considering this subject in *Quigley's Est.*, 329 Pa. 281, 198 A. 85, speaking through Mr. Justice STERN, who recited the appellant's contention that the whole trust failed because of certain void remainders, we said (p. 289) : "The general doctrine is definitely opposed to this position. Ordinarily the validity of prior limitations is not affected or disturbed by reason of ultimate ones which transgress the rule against perpetuities. There is a well nigh continuous current of authorities in Pennsylvania establishing this principle." What was observed in a footnote in that case strikingly embodies the thought which rises and should be given effect where the question of the maintenance of valid provisions of a trust is to be decided : "It was said, somewhat picturesquely, in *Landram v. Jordan*, 203 U. S. 56, 63 : 'The trust is not a metaphysical entity or a Prince Rupert's drop which flies to pieces if broken in any part.' "

The view that the trust is to continue while the life estates and the annuities last (they amount to $220,000 a year) is borne out by what was said in *Lockhart's Est.*, 306 Pa. 394, 159 A. 874, where, after citing certain decisions, we stated (p. 405) : "All these decisions lead us to conclude that the invalid disposition of the one-third of the income does not affect the gift of life interests to Wilmer and his son William (*Whitman's Est.*, 248 Pa. 285), and that during their lives the whole estate must be retained in trust for the payment of their shares of income." In *Whitman's Est.*, we said (p. 290) : "Although in these latter limitations the testator may have infringed the rule against perpetuities to some extent, yet, it is clear, when we consider the provision for his grandsons, his attempt to create a separate use trust for his daughter and her daughters, and the general limitation over on the death of his daughter without children, that his mind was set on these things, and

not on creating or working out a general scheme to circumvent the rule against perpetuities. Under such circumstances, a void limitation is viewed as merely incidental; it may fall, but it cannot alter or destroy a precedent life estate." In the Restatement of the Law of Trusts, Sec. 65, it is set forth: "Consequences of illegality. If a provision in the terms of the trust is illegal, the intended trust fails altogether if, *but only if,* the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust." (Italics supplied.) In the Comments, appears (p. 204): "(b) Remoteness. An intended trust fails altogether if there is no beneficiary who is definitely ascertainable within the period of the rule against perpetuities. If an intended trust is created for several beneficiaries, and the interest of one or more of them will not necessarily vest within the period of the rule against perpetuities, the trust fails so far as that interest is concerned. Whether the intended trust fails altogether depends upon whether the provision which failed can be separated from the other provisions without defeating the purpose of the settlor in creating the trust."

In setting up the trust, testator provides that all of the stock shall be held as a unit and that the income shall be ratably divided among his three children. He provides in the second codicil for annuities to be paid out of income of the trust to his nephew, his sister and his living grandchildren. He further provides that as his children die, one-half of the income which they have been enjoying shall be accumulated for charity, until a fund of $2,000,000 is raised, which he directs shall be used to found a school in memory of his father, John Wanamaker, devoted to the training of artisans, and directs that the other half shall be paid to his grandchildren. All of these provisions are valid. The life estates and income given to the children and the annuities vest immediately upon testator's death and the

life estates in income given to his grandchildren must vest within lives in being, to wit, the lives of testator's children. As the life estates to the grandchildren must vest within the period, since they must start on the death of a life in being when Rodman Wanamaker died, to wit, the lives of his children, these life estates are good, even though they may extend beyond the period prohibited by the statute, since the prohibition is against postponing the vesting of estates, and as the life estates vest within the period, they are good, even though the remainders over upon the deaths of the grandchildren are void as violating the rule: *Price's Est.*, 260 Pa. 376, 103 A. 893; *Friday's Est.*, 313 Pa. 328, 170 A. 123; *Lippincott's Est.*, 333 Pa. 48, 3 A. (2) 363. We think the life estates and the annuities are not so intertwined with the ultimate remainders as to force the conclusion that the testator would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside (*Quigley's Est.*, supra, p. 289). On the contrary, we are of opinion that the testator was endeavoring to meet the perpetuities rule, but failed to do so. It is manifest from the will that the testator's dominant purpose was the protection of his children, the annuitants and grandchildren whom he knew. Furthermore, his primary charitable gift would fail if the whole trust were stricken down.

While it is argued by appellant that the perpetuation of the business of John Wanamaker Philadelphia and the desire to continue a "dead hand control" over the business was the dominant purpose of the testator, we do not subscribe to this interpretation, particularly in view of the eighth paragraph of the will, where he provides that the trustees, with the consent of the beneficiaries, or even against their wishes, may sell and dispose of the business of John Wanamaker Philadelphia in whole or in part.

It is argued by appellant that the life estates under the trust are void as violative of the rule, because all of the beneficiaries under the trust are lineal descendants of the testator, and under such circumstances, it has been held the entire testamentary dispositions will be set aside.*  The fact here is that all the beneficiaries under the trust are not lineal descendants of the testator.  Therefore, the principle invoked has no application.

Even if the trust were to be held invalid, because it offends the rule against perpetuities, the appellant as administrator c. t. a. of John Wanamaker, Jr., would have no standing to claim anything from the Estate of Rodman Wanamaker, nor would the widow of John Wanamaker, Jr., who is the beneficiary of his will.  If the trust is invalid, an intestacy would result, and John Wanamaker, Jr., would have been entitled to one-third of the stock absolutely.  He realized this and by an agreement entered into by himself and his two sisters (the trustees also being parties), a trust inter vivos was created in the event that the trust created by the will should be found to be void.  This agreement is dated June 11, 1928, three months after the death of Rodman Wanamaker.  It recites the paragraphs of the will and codicil relating to the trust in question.  Annexed to the agreement are full copies of the will and codicils.  It is set forth that there is some doubt as to when the trusts created by the will terminate, "it being alleged that the provisions of the will and codicils violate the rule against perpetuities."  It is recited that in consideration of the execution of the agreement by the other children, each child of Rodman Wanamaker,

---

* *Coggins' Appeal,* 124 Pa. 10, 16 A. 579; *Johnston's Est.,* 185 Pa. 179, 39 A. 879; *Kountz's Est. (No. 1),* 213 Pa. 390, 62 A. 1103; *Geissler v. Reading Trust Co.,* 257 Pa. 329, 101 A. 797; *Ledwith v. Hurst,* 284 Pa. 94, 130 A. 315; *Feeney's Est.,* 293 Pa. 273, 142 A. 284; *Scott's Est.,* 301 Pa. 509, 152 A. 560; *Quigley's Est.,* 329 Pa. 281, 198 A. 85.

naming the three, agrees that the period for distribution of the principal of the trust of the capital stock of John Wanamaker Philadelphia, shall be twenty-one years after the death of the last survivor of Mary Brown Warburton, Rodman Wanamaker, 2nd, Fernanda W. Munn, John Wanamaker, Jr., Marie Louise Munn and such grandchildren of Rodman Wanamaker as may have been living at the time of his death, at which time the principal of the trust shall be distributed to and among the descendants of Rodman Wanamaker then living, in equal shares per stirpes. The three children expressly ratified and confirmed the will and codicils "as hereby agreed to be construed and interpreted" and conveyed and assigned to the trustees designated in the will all of their right, title and interest in the capital stock of John Wanamaker Philadelphia, in trust for the same uses, and with the same powers and the same limitations and remainders, as are set forth in the will, except as to the period of final distribution. The agreement then goes on to provide, "Anything herein contained to the contrary notwithstanding, it is understood and agreed by Fernanda W. Munn, John Wanamaker, Jr., and Marie Louise Munn, that should any of the provisions of the will and codicils of Rodman Wanamaker be void or declared to be void under the laws of any State of the United States, in whole or in part, or as to any specific part of such estate, this agreement and the trust hereby created, shall nevertheless, be valid. This agreement shall be construed as an indenture of trust inter vivos under the laws of the State of Pennsylvania where this instrument is to be performed." At the time of executing this agreement, all of the children were of full age, John Wanamaker, Jr., being thirty-eight years old.

On January 26, 1931, another agreement was executed by John Wanamaker, Jr., and all the other parties in interest, including the trustees, the annuitants, guardians and guardians ad litem for minors, in which other

252

questions growing out of the administration of the estate were disposed of, among them, the distribution of income to the three children, in which it was stated: "This agreement is not intended to affect or alter, nor shall it be construed to affect or alter" the agreement of June 11, 1928. This later agreement was approved by the Orphans' Court, and the court in its adjudication of the account of the trustees when filed, awarded the stock of John Wanamaker Philadelphia to the trustees. John Wanamaker, Jr., made no claim at the audit that he was entitled to one-third of the stock and took no exception to the adjudication awarding it to the trustees. Counsel then representing him specifically approved the award by signing the schedule of distribution. On May 25, 1934, John Wanamaker, Jr., having become dissatisfied with the management of the Wanamaker Stores, brought suit against the trustees in New York. He swore to the bill of complaint which was brought against the trustees "individually and as trustees under agreement dated June 11, 1928." It is specifically recited in this proceeding that the trustees are sued as trustees of a trust inter vivos under the 1928 agreement. This suit was compromised and settled under an arrangement which provided, among other things, that John Wanamaker, Jr., would not file any objection to the account of the trustees out of which this proceeding grows. Shortly after this litigation was settled, John Wanamaker, Jr., died November 29, 1934.

John Wanamaker, Jr. in his lifetime, and he lived for more than six years after the agreement of 1928, never questioned it. In fact, by the agreement of 1931 and by the position which he took in the New York litigation, he expressly ratified it. If he were living, he would not be heard to nullify it. Those claiming through him have no standing to set it aside and are bound by it. If it were to be set aside, his second wife would receive one-third of the corpus of the trust, as she is the sole beneficiary under his will, and his two

children would receive nothing. We think it is a fair inference that he did not provide for them in his will because he knew they were provided for under the will of his father, as confirmed by his agreement.

By a memorandum filed after the oral argument and on a matter not set forth in the statement of the questions involved, appellants seek to raise the further question that the trust fails under the will and under the agreement of 1928, because its true purpose was the carrying on of the corporate business of John Wanamaker Philadelphia, in a manner forbidden by the law of corporations, through the naming of one of the trustees as a "managing" trustee, and by other directions. We have given consideration to this contention, and are of opinion that it is without merit.

Who shall be entitled to the corpus of the trust, following the death of the last of the life tenants and annuitants, we leave for decision when that event occurs.

The decree of the court below, approving the schedule of distribution and awarding the shares of John Wanamaker Philadelphia to the trustees therein named, is affirmed. Costs to be paid by appellant.