389 A.2d 536

In re Deed of Trust of Isaac W. FRANK dated January 3, 1927.

Appeal of Alan I. W. FRANK, Joan Frank Apt and Barbara Frank Dane, beneficiaries under the Deed of Trust.

Supreme Court of Pennsylvania.

Argued Jan. 17, 1978.

Decided July 14, 1978.

118

Gilbert J. Helwig, Robert G. Lovett, Pittsburgh, for appellant in No. 94.

John E. Grasberger, Litman, Litman, Harris & Specter, Pittsburgh, for appellant in No. 95.

Donald L. McCaskey, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Julian Ruslander, Berman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, for appellee in Nos. 94 and 95.

Roslyn M. Litman, Litman, Litman, Harris & Specter, Pittsburgh, for appellee in No. 94 only.

Gilbert J. Helwig, Robert G. Lovett, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee in No. 95 only.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In 1927, testator Isaac Frank created an irrevocable trust by which he received income for life. At his death, his three children, William K. Frank, Robert J. Frank and Bessie Frank Anathan, were to receive income from the trust for their respective lives. The trust provided that, upon the death of each child, "the share of the income from the trust fund of the one so dying shall be paid to his surviving wife or her surviving husband" for life or until remarriage. If a child died without a surviving spouse, or upon death or remarriage of the surviving spouse, the trust for that child continued for the benefit of his or her issue, who were to receive income in equal shares per stirpes until termination of the trust. The trust was to end

"at the decease of my last surviving child, and when both my daughters-in-law and my son-in-law shall have died or remarried then and thereupon the corpus of this trust estate shall be divided into three equal parts or shares . . . ."

The trust provided that upon termination, the trustees would divide the principal into three equal parts to be distributed as each of testator's children had appointed or, in default of exercise of the power of appointment or if the child died without issue surviving, to the child's heirs at law under the intestate laws of the Commonwealth of Pennsylvania.

When testator created the trust in 1927, his daughter Bessie Frank Anathan was 41 years old. She had married Simon Anathan more than fourteen years previously and bore him two children. Bessie died in 1976. Testator's second child, William K. Frank, was 36 years old in 1927 and married to Florence K. Frank since 1914. The couple had three children. Florence K. Frank died in 1940. Five years later, William K. Frank married Mary K. Frank, by whom he had one child. William K. Frank died in 1964. Mary K. Frank is now 67 years old. Testator's third child, Robert J. Frank, was 30 years old in 1927 and married to Cecilia K. Frank for five years. He and Cecilia had two children. Robert J. and Cecilia Frank were divorced in 1951. That same year, Robert J. married Ruth Louise Frank, who remained his wife until her death in 1963. The couple had a son. Robert J. Frank died in 1964.[1]

Robert J. Frank appointed his share of the trust to his children, Alan, Joan and Barbara. William K. Frank declined to exercise his power of appointment if the trust terminated before his wife Mary's death or remarriage but, if the trust ended at her death or remarriage, appointed to his surviving issue. Bessie Frank Anathan appointed her share to her issue living at the time of distribution.

Upon the death of Bessie Frank Anathan in 1976, the trustees petitioned the orphans' court for distribution. Appellants, Barbara Frank Dane, Joan Frank Apt and Alan Frank, children of Robert J. Frank, argued to the auditing judge that the trust was intended to terminate upon Bessie's death because she was testator's last surviving child. Their position was that under the provision terminating the trust "at the decease of my last surviving child, and when both my daughters-in-law and my son-in-law shall have died or remarried . . ., only individuals married to testator's children at the time of execution of the trust could be a daughter- or son-in-law. Because all those individuals had died by 1971, appellants asserted that the trust ended in 1976 when Bessie died. Appellees Mary K. Frank and her

1. See Appendix, infra.

daughter Maude, argued that Mary was a daughter-in-law of testator and that consequently the trust could not terminate until she either died or remarried. The auditing judge determined that Mary K. Frank was a daughter-in-law and that therefore the trust had not terminated.[2] The orphans' court en banc, equally divided, affirmed the determination of the auditing judge. The only question on this appeal is whether Mary K. Frank is a "daughter-in-law" within the terms of the termination clause of the trust.[3] We hold that she is a "daughter-in-law" and affirm.

In *McDowell National Bank v. Applegate*, 479 Pa. 300, 304–305, 388 A.2d 666, 668 (1978), this Court again announced:

"As in any matter involving interpretation of a [trust], the intent of the testator, if it can be ascertained, must prevail. *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978); *Blough Estate*, 474 Pa. 177, 378 A.2d 276 (1977); *Hamilton Estate*, 454 Pa. 495, 312 A.2d 373 (1973). To determine this intent, 'a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question.' *Estate of Sykes*, 477 Pa. at 257, 383 A.2d at 921; accord, *Hamilton Estate*, supra; *Chambers Estate*, 438 Pa. 22, 263 A.2d 746 (1970). This intent 'must appear with reasonable certainty, such that there can be little doubt of his intent.' *Estate of Sykes*, supra. Only when the intent does not appear with reasonable certainty will a court resort to rules of construction. Id."

Accord, *Flinn Estate*, 479 Pa. 312, 388 A.2d 672 (1978); *Schappell Estate*, 424 Pa. 390, 227 A.2d 651 (1967); *Houston Estate*, 414 Pa. 579, 201 A.2d 592 (1964).

2. Thomas Frank, James Frank and Margaret Frank Green, children of William K. Frank by his first wife, Florence, took part in the orphans' court proceedings but have not appealed from the court's decree.

3. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1978).

■ Neither the language of the instrument nor the scheme of distribution demonstrates testator's intent with reasonable certainty. Appellants argue that in the provision terminating the trust, the words "both" and "my" in the phrase "both my daughters-in-law and my son-in-law" indicate that testator had in mind only those personally known to him. This conclusion is unjustified. Most likely, "both" and "my" seemed to testator a convenient way to refer to the wives of his two sons, whoever they would be when testator's children died.

■ Testator directed that upon the death of each child, his or her share of income would pass to "his surviving wife or her surviving husband," but did not use the possessives "his" or "her" and "surviving" in the termination clause. From this variation in wording, appellants conclude that only in the former provision did testator intend to include possible future in-laws. We agree with the auditing judge that no such intent can be derived from the difference in wording.

■ Surrounding circumstances also fail to reveal testator's intent with reasonable certainty. Appellants argue that testator intended to exclude a future daughter-in-law "in view of the ages and long standing family circumstances of his children and generally accepted social standards of that time," and "probably did not envision a divorce by any of his children or the remarriage of a child after divorce or the death of his own spouse." Appellants have offered no evidence to support their assertions regarding "generally accepted social standards of that time," and we refuse to take judicial notice of a fact far from established as incontestable or a matter of common knowledge. *Commonwealth ex rel. Duff v. Keenan*, 347 Pa. 574, 33 A.2d 244 (1943). Moreover, the circumstances of testator's life and family contradict appellant's conclusion. In 1927, all of testator's children were under 42 years of age and had been married

no longer than 14 years. Robert J. Frank had been married just five years. Thus, appellants err in describing the family circumstances as so long standing and established that testator could not "envision" changes within his childrens' families, including death, divorce and remarriage.

Appellants further argue that testator's scheme of distribution was to vest remainder interests in his grandchildren at the earliest possible time, which would be thwarted by the view that Mary K. Frank was a daughter-in-law for purposes of the termination clause. On the contrary, the scheme of distribution does not appear designed to vest remainder interests of grandchildren to the exclusion of other interests created in the instrument. The trust creates interests for both testator's children and their spouses and for grandchildren, but does not indicate that one is to have preference over the other. Appellants' argument simply substitutes as a conclusion their desire to take remainder interests as of 1976 rather than at a later time.

We cannot conclude that testator's intent appears with reasonable certainty. We therefore resort to a canon of construction to supply testator's likely intent.

We recently reaffirmed that "where a testator employs a class designation, his intent is to include not only those known to him but all that may come into the class described unless there is some contrary intent manifested." *McDowell National Bank v. Applegate,* 479 Pa. at 306, 388 A.2d at 669 (quotation marks omitted) (bequest to "children" included children adopted after execution of instrument); accord, *Earle Estate,* 369 Pa. 52, 85 A.2d 90 (1951) (bequest to male children of testator's sons bearing family named included grandsons born after testator's death); *Wanamaker's Estate,* 335 Pa. 241, 6 A.2d 852 (1939) (bequest to "grandchildren" included those born after testator's death). Testator did not refer by name to particular daughters-in-law in the termination clause; nor did he otherwise describe them so they could be identified as though specifically named. Rather, he used a class designation. Because no

intent to the contrary exists in the trust, we construe the termination clause to include Mary K. Frank, who, after execution of the trust, became a daughter-in-law of testator and stood in that relation to him.

Appellants argue that this canon of construction produces a violation of the common law Rule Against Perpetuities, which voids interests where a possibility exists that they will not vest until more than twenty-one years after lives in being at the creation of the interest. *McDowell National Bank v. Applegate,* supra (citing cases). Thus, appellants argue that the possibility existed that, if any of testator's children remarried, the second spouse would have been born after creation of the trust in 1927, and that, if the trust continued during the life of the second spouse, the gift in default of appointment to the heirs of Bessie Frank Anathan, to be determined at termination of the trust, would occur later than twenty-one years after lives in being. Appellants therefore contend that, to save the trust from a violation of the Rule Against Perpetuities, we must interpret the termination clause to exclude in-laws not married to testator's children at the time of creation of the trust. See *Farrington Will,* 422 Pa. 164, 220 A.2d 790 (1966) (instrument should be construed, if possible, to give it legal effect).

Our interpretation, however, does not cause the trust to run afoul of the Rule. Although we have never applied the Rule to gifts in default of appointment, the better view is that the common law contains an actual events test for such gifts. That is, compliance with the Rule is determined according to actual events rather than by possibilities. Restatement 2d of Property, § 1.4 (comment i) (Tentative Draft, 1978); 6 American Law of Property §§ 24.35, 24.36 (A. J. Casner ed. 1952); cf. *Warren's Estate,* 320 Pa. 112, 182 A. 396 (1936) (gift by appointment). Thus, testator's trust is subject to the actual events test, not the possibilities test.[4]

4. The Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 6104(b) (1975), provides:

■ Under the actual events test, Mary K. Frank was a life in being when testator created the trust. No interest can vest later than twenty-one years past her life because the last interests to vest do so upon either her death or remarriage. Thus, construction of the trust's termination clause to include Mary K. Frank as a "daughter-in-law" presents no violation of the Rule Against Perpetuities. See *Pearson Estate*, supra.

■■ Appellants argue in the alternative that, because testator provided for three independent per stirpital lines of distribution, and all income and principal interests have vested in two of the per stirpital lines, the trust as to those lines should be terminated. This conclusion would allow appellants to receive their interests in the principal even though the trust would continue for the benefit of Mary K. Frank and the children of William K. Frank. Partial termination of a trust, however, is permitted only where the testator has not expressed an intent that the trust remain intact. *Card's Estate*, 337 Pa. 69, 9 A.2d 552 (1939). Here, testator clearly specified that the trust would end only at the decease or remarriage of all his daughters- and son-in-law. When testator has designated the time at which the

"Void interest; exceptions.—Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, . . . ."
Formerly, this section did not apply to instruments, such as testator's executed in 1927, taking effect before January 1, 1948, the effective date of the predecessor of § 6104(b), the Estates Act of April 24, 1947, P.L. 100, § 20, 20 P.S. § 301.20. *Pearson Estate*, 442 Pa. 172, 275 A.2d 336 (1971). The Legislature has recently amended the Code to apply the actual events test to "all interests heretofore or hereafter created." 20 Pa.C.S.A. § 6104(d) (as amended, effective June 27, 1978). Cf. *Arrott Estate*, 421 Pa. 275, 217 A.2d 741 (1966) (Principal and Income Act applicable to trusts created before effective date of the Act); *Tyler Trusts*, 447 Pa. 40, 289 A.2d 441 (1972) (same). This amendment is particularly salutary because it lays to rest a doctrine which often worked to defeat the intentions of the donor. *Newlin's Estate*, 367 Pa. 527, 80 A.2d 819 (1951); accord, 6 American Law of Property § 24.36 (A. J. Casner ed. 1952). The Legislature's amendment fortifies our conclusion that the better view of the common law Rule Against Perpetuities examines actual events for gifts in default of appointment.

126

trust will terminate, this Court must respect that instruction.

Decree affirmed.  Each party pay own costs.

APPENDIX

POMEROY, J., did not participate in the consideration or decision of this case.

EAGEN, C. J., joins in the Opinion of the Court and files a concurring opinion.

MANDERINO, J., filed a dissenting opinion.

LARSEN, J., filed a dissenting opinion in which MANDERINO, J., joins.

EAGEN, Chief Justice, concurring.

I join in Mr. Justice Roberts' opinion even though there may be some conflict with this Court's decision in *Pearson Estate*, 442 Pa. 172, 275 A.2d 336 (1971).

Substantial controversy continues in legal circles as to the proper test to be applied in donative transfer cases such as here presented. Like Mr. Justice Roberts, I am now persuaded that the "actual events" test as opposed to the "possibilities" test is more sound and poses the least problems.

MANDERINO, Justice, dissenting.

I dissent. When the testator, Isaac Frank, wrote that the trust shall terminate "at the decease of my last surviving child and when both my daughters-in-law and my son-in-law shall have died or remarried," he intended that the trust should terminate at the death of the survivor of his three children and their spouses known to him. The natural construction of "both my daughters-in-law" would refer to the two daughters-in-law then married to testator's sons. The majority's construction, including daughters-in-law unknown to testator, is unnatural and strained.

The income of the trust is currently distributed one-third to Bessie Frank Anathan's children, one-third to Ralph J. Frank's children, and one-third to Mary K. Frank (William's second spouse). If the trust is considered terminated, the corpus distribution would be the same except that Mary K. would get one-ninth of the corpus and William's children would get two-ninths. However, under the majority's holding the trust will not terminate until the death of Mary K., when the corpus will be distributed as follows: one-third to Bessie's children, one-third to Robert Frank's children, and because William did not exercise his power of appointment, one third to the intestate heirs of William. Thus, if the children of William predecease Mary K., which is a very real possibility since Mary K. is only six years older than William's eldest son, then one or more of the children of William *will never receive any benefit whatsoever from the trust.* This plan thwarts the testator's intent: the trust instrument indicates a definite intent to benefit the testator's grandchildren. The children of William are members of the class of grandchildren, and the testator did not intend to postpone

the distribution of the corpus of the trust until the death of a much younger daughter-in-law unknown to him.

LARSEN, Justice, dissenting.

I dissent. Our duty in this case is to determine and apply the intent of the settlor as to when the trust is to terminate. The issue is the meaning of the words used in the termination clause, providing the trust would terminate "at the decease of my last surviving child, and when *both my daughters-in-law and my son-in-law shall have died or re- married . . .*" (Emphasis added.)

The majority claims that the testator's intent cannot be discerned with reasonable certainty and, therefore, they "construe the termination clause to include Mary K. Frank, who, after execution of the trust, became a daughter-in-law of testator and stood in that relation to him." (at 124) The fact of the matter is that Mary K. Frank *never* "stood in that relation" to Isaac Frank. How can one be considered a daughter-in-law of a man who had died 15 years prior to the marriage? I do not believe that Isaac Frank considered, in 1927, that a possible future spouse of one of his children, who might remarry after his (Isaac's) death, would be *construed* as his "in-law". As aptly stated by the dissenting opinion of Judge J. Frank McKenna, joined by Judge Paul Zavarella, in the court below, "[t]o construe the words 'both' as referring to daughters-in-law, known and unknown, on the one hand, and son-in-law on the other, would result in a strained and unnatural construction and one which we believe testator never intended."

I find other portions of the trust instrument illuminating in the quest for Isaac Frank's intent, which I find *can* be determined with reasonable certainty. First, a reading of the instrument reveals that, with respect to income interests, Isaac used the phrase "his [referring to his sons'] wife or her surviving husband," which is significantly different terminology from "both my daughters-in-law and my son-in-law," the phrase employed by Isaac to describe those persons whose death or remarriage would trigger the termination of

the trust. Obviously, he was aware of the distinction. A logical explanation of the distinction is that the settlor intended his children's spouses, whoever they might be, to share in the income of the trust until their death or remarriage, but not at the expense of unduly delaying the vesting in enjoyment and possession of the gifts over to his grandchildren. Thus, in the termination clause, he referred, albeit not by name, to six designated individuals—his two sons and "both of my daughters-in-law," and his daughter and "my son-in-law."

Second, other portions of the instrument indicate that Isaac was familiar with and sensitive to the limitations on future gifts to his grandchildren imposed by the rule against perpetuities.[1] Historically, a well-known perpetuities problem is the classic case of the unborn-widow of a child of a settlor or testator. Leach, *Perpetuities in a Nutshell*, 51 Har.L.Rev. 638, 644 (1938). Thus, where the settlor makes a gift in trust "to my son A, for life, then to his wife if surviving, for her life, then to their children," the son could marry a woman not in being at the time the trust is created; the gift to the children of A would, therefore, be void under the common law rule against perpetuities because of the *possibility* that their interests would not vest until more than 21 years after lives-in-being at the creation of the future interest (the son could predecease the "unborn widow" who could survive him by more than 21 years). Since Isaac Frank, concerned as he was with the rule against perpetuities, would not desire this result, his reference to "both his daughters-in-law and my son-in-law" was a reference to those daughters-in-law and the son-in-law existing at the time he created the trust.

The majority answers this argument by applying the "actual events" test, adopted by our legislature in 1948, to the gifts to the grandchildren, concluding that, because

1. The trust agreement states, in relevant portion: "At the time when this trust would otherwise cease as herein directed, the majority of my surviving grandchildren may elect that it continue for any term as is not inconsistent with the law of Pennsylvania against perpetuities . . . ."

actual events have disclosed that Mary K. Frank was, in fact, a life-in-being when the trust was created, and because no interest could vest beyond 21 years after either her death or remarriage, "construction of the trust's termination clause to include Mary K. Frank as a 'daughter-in-law' presents no violation of the rule against perpetuities." (at 125) The difficulty with this analysis is that it treats the issue as solely a determination of the validity of the grandchildren's remainder interest. This is *not* the issue. We are here concerned with Isaac Frank's intent *at the time he created the trust*, in 1927.

At the time he executed the trust agreement, the settlor *necessarily* had to be concerned with *possibilities*, since it would require a fortune-teller to know, in 1927, events that would transpire in 1945. The use of a hindsight analysis to determine the *present* validity of the interests created is of no consequence in the search for Isaac's intent, especially since, in 1927, the common law rule against perpetuities prevailed. Thus, the settlor would have had to be clairvoyant not only as regards his children's future relationships, but also as regards the actions of the legislature in adopting the "actual events" test (alternatively referred to as the "second look" doctrine or the "wait and see" approach).

Therefore, I find that Isaac Frank did not intend to create future interests in his grandchildren which, when the trust was created, were in violation of the rule against perpetuities as it was then applied in this Commonwealth. Consequently, he referred in the termination clause to six "lives-in-being," his three children and his three in-laws then existing. Under this interpretation, Mary K. Frank is excluded from the termination clause and the trust, therefore, terminated when Bessie Frank Anathan, the last of those six individuals, died in 1976.

For the foregoing reasons, I would reverse the Order of the court below and remand for proceedings not inconsistent with this Opinion.

MANDERINO, J., joins in this dissenting opinion.