572 A.2d 1249

**In re ESTATE OF John H. WEAVER, Deceased Sur Trust, John H.W. Macklin.**

**Appeal of Flora F. MACKLIN, M. Farrell, Macklin Shute, Elizabeth Stacey Macklin, Fidelity Bank, Accountant, Linda S. Macklin Marini, Valerie Macklin Paro, Vivian L. Macklin Megargee, and Floranne Macklin Burns.**

Superior Court of Pennsylvania.

Argued May 3, 1989.

Filed March 28, 1990.

Petition for Allowance of Appeal
Denied Aug. 13, 1990.

314

Hugh J. Bracken, Philadelphia, for appellant.

Edward J. Kaier, Philadelphia, for M. Farrell and Shute, participating party.

David M. Jordan, Norristown, for Elizabeth S. Macklin, participating party.

Pamela F. Wilford, Philadelphia, for Fidelity Bank, participating party.

Carl N. Martin, II, Philadelphia, for Linda S. Macklin Marini, Valerie Macklin Paro, Vivian L. Macklin Megargee, and Floranne Macklin Burns, participating party.

Before CAVANAUGH, TAMILIA and KELLY, JJ.

KELLY, Judge:

In this case we are called upon to determine whether the Orphans' Court of Montgomery County properly applied the rule against perpetuities to a residuary trust which was formed by a will executed in 1934. The trust provided life estates in the interest income for the testator's widow and his children, then to his grandchildren, with the principal to be liquidated and distributed to each of the testator's great-grandchildren upon the death of their beneficiary parent. The last grandchild, John H.W. Macklin (Heil), died in 1987. The current controversy is whether Heil Macklin's share of the trust principal should be distributed to his children, the testator's great-grandchildren (appellees), or whether the trust corpus became part of Heil Macklin's estate and should be given to Heil's widow, Flora F. Macklin (appellant) as the sole residuary beneficiary under Heil Macklin's will. The appellant contends the original trust was void under the rule against perpetuities in effect at the time of the testator's death which considered possible rather than actual events to determine validity of future interests. The appellees, on the other hand, contend the "actualities test," adopted by the legislature in 1947, and made retroactive by a statutory amendment in 1978, controls the distribution of the trust proceeds. We find the lower court properly applied the "actualities test" to the instant perpetuities problem and correctly ordered the trust corpus be distributed to the testator's great-grandchildren.

The relevant facts and procedural history are as follows. John H. Weaver, the testator, died on April 26, 1934, leaving a will which set up a trust. The trust provided life estates of the trust income for his widow, Ida Weaver, who died on March 26, 1935, his daughter, Phoebe Weaver Macklin, who died on April 21, 1936, Phoebe Macklin's husband John F. Macklin, who died on October 10, 1949, and for the children of the Macklin marriage (the testator's grandchildren), Ida Weaver Macklin Lilley Wark, and Heil Macklin. Separate arrangements were made in the will for the children of the testator's other daughter, Marian Weav-

er Downes Kampmann, who predeceased the testator. The will created one entire residuary trust which for all practical purposes (except for investment and administrative purposes) was divided into two equal shares—one-half for the Macklin line and one-half for the Kampmann line. *In re Weaver's Estate*, 390 Pa. 128, 137, 134 A.2d 675, 681 (1957).[1]

The following diagram correctly outlines the line of Macklin estates involved:

In his will, the testator provided that after the death of

---

**1.** In 1976, the Court of Common Pleas of Montgomery County, Orphan's Court Division, divided the trust into two separate trusts. *Weaver's Estate*, 2 D. & C.3d 717 (Montg.Co.1976). This appeal involves *only the Macklin line.*

his widow, Ida Weaver, the income from the trust and the remainder interests in the principal would be divided into two equal shares, one for the Macklin line and one for the Kampmann line. The testator directed that the income from the Macklin's share be paid to his daughter, Phoebe Weaver Macklin for life. Then, after her death, her share in the trust income was to be paid in accordance with section 7(B)(2)(b) of the will, which provided:

*Upon the death of my daughter, Phoebe Weaver Macklin, I direct my trustees to pay* the remaining one-half of *her share of income to her children* then living and the issue of such of her children, if any, as may have died, *in equal shares, per stirpes and not per capita, for and during the life of each of such beneficiaries, or so long as the payment of such income shall be permitted under the laws of the Commonwealth of Pennsylvania in force at the time of my death. Upon the death of each of such beneficiaries,* the issue of Phoebe Weaver Macklin, *or upon the earlier termination of said trust as hereinabove provided, then I direct that the portion of the principal* of my residuary estate represented by the proportion of income, which such issue of my daughter, Phoebe Weaver Macklin, shall then be entitled to receive, including the proportion of income payable to such issue after the death or remarriage of John F. Macklin, *shall be paid over by my trustees to said respective beneficiaries if living, and if dead then to the issue of such respective beneficiaries per stirpes absolutely;* and in the event of failure of issue of any such beneficiary, to pay said principal share to the then living issue of my said daughter, Phoebe Weaver Macklin, in equal shares per stirpes.

(Emphasis added).

After Phoebe Weaver Macklin's death in 1936, her children, Ida Weaver Macklin Lilley Wark and John H.W. Macklin (Heil) began receiving income from the trust. Upon John F. Macklin's death in 1949, Ida Weaver Macklin Lilley Wark and Heil Macklin each received one-half of the

Macklin line's share of the trust income. Ida Weaver Macklin Lilley Wark died in 1953. Her share of the trust principal was distributed to her four surviving children, the great-grandchildren of the testator. However, the trust continued to provide income for the testator's last surviving grandchild in the Macklin line, Heil Macklin. *In re Weaver's Estate, supra,* 134 A.2d at 676.

When Heil Macklin died in 1987, the trust purpose (to provide support for the testator's widow, children, and grandchildren) ended. The surviving trustee, Fidelity Bank, filed an account and requested the Orphans' Court of Montgomery County to approve its proposed distribution of the trust principal to the testator's great-grandchildren. In its Petition for Adjudication, Fidelity Bank proposed the trust principal be distributed to Heil Macklin's five daughters, M. Farrell Macklin Shute, Linda Macklin Marini, Valerie Macklin Paro, Vivian L. Macklin Megaree, and Floranne Macklin Burns as well as a share to Elizabeth Macklin, the daughter of John H.W. Macklin Jr., Heil Macklin's son who predeceased him. The above mentioned group are the appellees.

The appellant, Flora F. Macklin, Heil Macklin's widow, filed timely objections to the account and the proposed distribution to the appellees.[2] The appellant contended that according to the rule against perpetuities in effect in 1934, the remainder to the great-grandchildren was void and the trust principle was part of Heil Macklin's residuary estate to which the appellant was entitled as sole beneficiary under Heil Macklin's will. Following an agreement by counsel for all concerned parties and the court, the objections were submitted to the court for a decision on the briefs. The objections were dismissed and the account was confirmed *nisi* by the decision and order of the Orphans' court. Thereafter, the appellant filed Exceptions to Adjudication. After oral argument, the Orphans' court, sitting *en*

2. Also joining appellant in this appeal are her two daughters, Lisa M. and Sharon Taylor, stepdaughters of Heil Macklin. However, any interests they have are subsidiary to Flora F. Macklin's claim and not directly involved in this litigation.

*banc,* dismissed the exceptions and confirmed the adjudication absolutely. This timely appeal followed.

On appeal, the appellant has raised the following three issues for our consideration:

I. WHETHER THE TESTATOR INTENDED THAT THE DURATION OF CERTAIN INCOME INTERESTS IN THE TRUST BE LIMITED TO THE TIME ALLOWED UNDER THE RULE AGAINST PERPETUITIES IN EFFECT IN 1934?

II. WHETHER THE APPLICATION OF THE RULE AGAINST PERPETUITIES IN EFFECT IN PENNSYLVANIA IN 1934 WAS CONTROLLED BY POSSIBLE RATHER THAN ACTUAL EVENTS?

III. WHETHER THE TRUST TERMINATED DURING THE LIFETIME OF HEIL MACKLIN OF WHOM THE APPELLANT IS WIDOWED?

(Appellant's Brief at 2–4).

Before we reach the issues raised by the appellant, we must first review the development of the perennially troublesome rule against perpetuities in Pennsylvania. Professor John Chipman Gray, a leading authority in the field stated:

There is something in the subject which seems to facilitate error. Perhaps it is because the mode of reasoning is unlike that with which lawyers are most familiar.

\* \* \* \* \* \*

A long list might be formed of the demonstrable blunders with regard to its questions made by eminent men, blunders which they themselves have been sometimes the first to acknowledge; and there are few lawyers of any practice in drawing wills and settlements who have not at some time either fallen into the net which the Rule spread for the unwary, or at least shuddered to think how narrowly they have escaped it.

Gray, *The Rule Against Perpetuities,* xi (4th ed.1942); *see also* Leach, *Perpetuities Legislation* 67 Harv.L.Rev. 1349, 1349 (1954) (describing the rule as a "technicality-ridden

legal nightmare" and a "dangerous instrumentality in the hands of most members of the bar").

Professor Gray's definitive statement of the rule against perpetuities, "no interest is good unless it must vest, if at all, no later than twenty-one years after some life in being at the creation of the interest" has been adopted by nearly every court which has decided a perpetuities case. Gray, *The Rule Against Perpetuities, supra,* at 191. Moreover, we note that,

> The common law rule against perpetuities is a rule against remoteness of vesting. A contingent future interest is invalid under the rule, if at the time of the creation of the interest, the circumstances are such that the contingency may go unresolved for too long a time. The rule is not concerned with the duration of interests, that is, the length of time they endure.... It is not a rule which limits directly the duration of a trust. There is no violation of the Rule Against Perpetuities even though the trust may endure beyond the perpetuities period. The Rule is satisfied if all contingent future interests are created so that they must vest, if they vest at all, within the perpetuities period.

Lynn, *A Practical Guide to the Rule Against Perpetuities,* 70 Duke L.Rev. 207, 211 (1964) (citations omitted).

The evolution of the rule against perpetuities in the area of class gifts has had three distinct developmental stages in Pennsylvania. The first stage began with the founding of Pennsylvania and lasted until 1929. During this period, Pennsylvania followed the early common law rule against perpetuities which then called for the remorseless application of the "possibilities test" to determine the validity of all future interests. Under this rubric, a future interest, such as a remainder in a trust to all great-grandchildren, was void if there was even the slightest possibility that it might vest beyond the permissible period of a life or lives in being plus twenty-one years. *See generally* Levin, *Section 6104(D) of the Pennsylvania Rule Against Perpetuities: The Validity and Effect to the Retroactive Application of*

*Property and Probate Law Reform,* 25 Vill.L.Rev. 213 (1980).

The second stage of development was a transitional period which lasted from 1929 to 1947. During this time period, our Supreme Court attempted to eliminate some of the harsher results which occurred in the area of the class gifts under the common law rule against perpetuities' "possibilities test" by adopting the doctrine of vertical separability. *See Kern's Estate,* 296 Pa. 348, 145 A. 824 (1929). The doctrine of vertical separability held that valid remainders would be separated from void ones and given effect if it would not alter the overall testamentary scheme of distribution. *See generally* Murphy, *Separability and the Rule Against Perpetuities,* 77 Dick.L.Rev. 277 (1973).

The third stage or modern era began in 1947, when the General Assembly passed the Intestate, Wills and Estates Act of 1947 which replaced the common law rule against perpetuities' "possibilities test" by statutorily adopting the "actualities test" to determine the validity of a future interest. The new statute which became effective on January 1, 1948 stated:

(a) General.—No interest shall be void as a perpetuity except as herein provided.

(b) Void interest; exceptions.—Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void.

(c) Time for beginning period.—The period allowed by the common law against perpetuities under subsection (b) of this section shall be measured from the expiration of any time during which one person while living has the unrestricted power to transfer to himself the entire legal and beneficial interest in the property.

Estates Act of 1947, Section 4(b), 20 P.S. § 301.4(b).

The new rule required Pennsylvania courts to determine the validity of future interests in accordance with events

which actually occurred during the period of the common law rule against perpetuities, a life or lives in being plus twenty-one years, and not by events which could possibly occur during this period. The adoption of the actualities test approach eliminated some of the more improbable possibilities that determined the validity of some future interests under the old rule such as the fertile octogenarian [3] and the unborn widow [4].

After the adoption of the "actualities test" approach, our Supreme Court interpreted the statute to be applicable only to testamentary trusts created after January 1, 1948. *See In re Newlin Estate,* 367 Pa. 527, 80 A.2d 819 (1951); *In re Lovering's Estate,* 373 Pa. 360, 96 A.2d 104 (1953); *Estate of Davis,* 449 Pa. 505, 297 A.2d 451 (1972). However, in 1978, the legislature amended the 1947 statutory rule against perpetuities to provide for retroactive application:

(d) Applicability.—The provisions of this section and of section 6105 (relating to rule against perpetuities; disposition when invalidity occurs) shall apply to all interests heretofore and hereafter created.

20 Pa.C.S.A. § 6104(d). The official comment clarifies the legislative intent by stating: "Whatever may have been the case when the Estates Act of 1947 was drafted, there now appears to be no constitutional bar to making provisions of Section 6104 and 6105 of the Probate, Estate, and Fiduciaries Code applicable to *all interests, whenever created.*" 20 Pa.C.S.A. § 6104(d) comment (emphasis supplied).

■ In the case at bar, the appellant, Flora F. Macklin, contends that it was the testator's intention to limit the duration of the trust to the time period allowed under the 1934 interpretation of the rule against perpetuities. The appellant argues this intention can be construed from the following language contained in the testator's will:

3. *See generally* Leach, *Perpetuities in a Nutshell,* 51 Harv.L.Rev. 638, 643 (1938).

4. *See generally Disston's Estate,* 46 D. & C. 496 (Pa.1942), *aff'd* 346 Pa. 129, 36 A.2d 457 (1944).

(b) Upon the death of my daughter, Phoebe Weaver Macklin, I direct my trustees to pay the remaining one-half of her share of income to her children then living and the issue of such of her children, if any, as may have died, in equal shares, per stirpes and not per capita, for and during the life of each of such beneficiaries, *or so long as the payment of such income shall be permitted under the laws of the Commonwealth of Pennsylvania in force at the time of my death.*

Section 7(B)(2)(b) (emphasis added). The appellant relies upon the emphasized portion of section 7(B)(2)(b) to assert that it was the testator's intent to devise life estates to each of the Macklin grandchildren, and if the remainder to the great-grandchildren violated the 1934 interpretation of the rule against perpetuities, the entire interest was to pass to the Macklin grandchildren in fee simple twenty-one years after the death of their last surviving parent. The appellant has framed the issue in her first contention in such a manner as to lead one to believe that the remainder to the testator's great-grandchildren was invalid under the 1934 interpretation of the rule against perpetuities for class gifts. However, careful research of the pre–1947 law for class gifts reveals this contention is unfounded.

Under the 1934 interpretation of the rule against perpetuities for class gifts, the remainder provided by the testator to his great-grandchildren was perfectly valid. The appellant has attempted to argue that all of Pennsylvania's pre–1947 rule against perpetuities class gift law evolved from *Leake v. Robinson*, 2 Mer. 363, 35 Eng. Reports 979 (1817), and its Pennsylvania progeny, *Kountz's Estate*, 213 Pa. 390, 62 A. 1103 (1906), *Lockhart's Estate*, 306 Pa. 394, 159 A. 874 (1932), and *In re Newlin's Estate, supra*. The rule from *Leake* states: if an interest is created in favor of one big class and it is possible for some person to be born into that class at a time beyond the period permissible under the rule against perpetuities, then the entire class gift is void. *Lockhart's Estate, supra*, 159 A. at 877. The appellant argues that this rule was applicable to all cases

involving class gifts before the passage of the 1947 Intestate, Wills and Estates Act. However, this argument is flawed. During the transitional period between 1929 and 1947, this rule was only applied in Pennsylvania to cases where there was a single remainder to a single class which remained open until the death of the survivor of the class of secondary life tenants.

In cases like the instant one, where the grandchildren were alive at testator's death, and the share of each was separate and ascertainable, Pennsylvania followed the doctrine of vertical separability set down in *Caitlin v. Brown*, 11 Hare 372, 68 Eng. Reports 1319 (1853). The doctrine of vertical separability holds:

> When gifts are made to several persons by one description, but the amount of the gift to one is not affected by the existence or nonexistence of the others, then the gifts are separable.

*    *    *    *    *    *

> When, on a gift to a class, the number of shares is definitely fixed within the time required by the rule against perpetuities the question of remoteness is to be considered with reference to each share separately.

Gray, *Rule Against Perpetuities, supra,* at 342, 345. The doctrine was applicable where valid remainders could be separated out from void ones and sustained without disturbing the testamentary scheme. The valid remainders are separated from the illegal one and given full effect. *See Kern's Estate,* 296 Pa. 348, 145 A. 824 (1929); *McCaskey's Estate,* 293 Pa. 497, 143 A. 209 (1928); *In re Estate of Morton,* 454 Pa. 385, 312 A.2d 26 (1973). The doctrine was adopted in *Kern's Estate, supra,* and followed in *Smith's Estate v. Commissioner,* 140 F.2d 759 (3rd Cir.1944) (applying Pennsylvania's rule against perpetuities to a class gift), and *In re Harrah's Estate,* 364 Pa. 451, 72 A.2d 587 (1950) (applying pre–1947 law to a class gift contained in a will executed in 1890).

In *Harrah,* our Supreme Court applied the pre–1947 rule against perpetuities to an 1890 will that closely resembled

Weaver's will. The testamentary trust called for successive life estates in the trust income for the testator's son and grandchildren with the remainder to be distributed to the testator's great-grandchildren. As in the instant case, the great-grandchildren's remainder was challenged as a violation of the rule against perpetuities. The objectors argued that it would have been possible for the testator's son to have more children after the testator's death, and these after born children could have subsequently had children born more than twenty-one years after the death of the grandchildren alive during the testator's lifetime. There, however, as in the instant case, the hypothesized scenario did not actually occur.

In *Harrah,* our Supreme Court applied the doctrine of vertical separability and held that the remainder to the heirs of the various grandchildren alive at the testator's death, was separable from the remainder to the heirs of a possibly after born child of the testator's son; because the separation of the valid remainder from the void one would not alter the overall testamentary plan. The court stated, "[i]t would be an extremely and socially unwise application of the rule against perpetuities to hold all the gifts in the remainder void as violative of the rule." *In re Harrah's Estate, supra,* 72 A.2d at 591.

The holding in *Harrah* is directly applicable to the instant case, and demonstrates the fact that the doctrine of vertical separability was part of Pennsylvania law long before the execution of Weaver's will. Under the doctrine, because Heil Macklin was a life in being at the time of the will's execution, the remainder to his issue was valid, and any possibly void remainder interest to after born children of his mother, which, as in *Harrah,* did not actually occur, was separable. Accordingly, we find the appellant's argument that the remainder to Heil Macklin's issue was void under the 1934 interpretation of the rule against perpetuities to be without merit.

Moreover, we find that the appellant's argument that her erroneous interpretation of the 1934 rule against

perpetuities for class gifts should be the controlling factor in determining the testator's intent for the distribution of his estate to be contrary to the well settled rules of will construction in this Commonwealth. The primary goal of the construing court is to effectuate the intent of the testator. In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed, only if the testator's intent remains uncertain may a court then resort to the general rules of construction. *In re Estate of Tashjian*, 375 Pa.Super. 221, 226, 227, 544 A.2d 67, 70 (1988). The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan. *In re Estate of Ogden*, 353 Pa.Super. 273, 276, 509 A.2d 1271, 1273 (1986). Specific words or phrases will be rejected when they subvert or defeat the testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit. *In re Estate of Hill*, 432 Pa. 269, 279, 247 A.2d 606, 612 (1968), *citing March's Estate*, 357 Pa. 216, 219, 53 A.2d 606, 607 (1947).

■ Our Supreme Court had previously applied these rules of will construction to Weaver's will in the litigation that ensued after the death of Heil Macklin's sister, Ida Weaver Macklin Lilly Wark in 1953. After a careful examination of the testator's meticulously drafted will, our Supreme Court stated that it was the testator's intent that: "... the Macklin great-grandchildren, upon the death of their respective parent, receive absolutely their respective share, per stirpes, of the principal from which their parent had been receiving income. *In re Weaver's Estate, supra*, 134 A.2d at 680–81. The appellant has not advanced any argument which could lead us to conclude that our Supreme Court erroneously construed the testator's intentions for the distribution of his estate. Therefore, we have no hesitation in following our Supreme Court's finding that it was the testator's intention that the trust remainder be distrib-

uted to his great-grandchildren after the death of his grandson, Heil Macklin.

Viewed in light of this supervening intention, the clause of the will previously quoted appears no more than an attempt to provide the probate court with a basis to reform the trust by cutting off any interests deemed to violate the perennially obscure and troublesome rule against perpetuities. To construe the provision as indicating an intent to cut off the trust, in accordance with appellant's view of the law in 1934, would require us to presume the testator had knowledge of the precise operation of the rule which the very clause in question clearly indicates he did not have, and would likewise require us to believe he went to the difficulty of designing a trust which by its express terms was intended to reach his great-grandchildren but he nonetheless intended that it be cut off, by operation of the clause in question, before the remainder could be distributed to them. If the testator actually had intended such a result, he certainly would have stated it in vastly simpler and more direct language. Accordingly, we could not construe the provision in the manner suggested by the appellant, even if her erroneous assumptions regarding the law in effect in 1934 had been correct.

■ The appellant's second contention is that the trial court erred when it applied the statutorily amended "actualities test" which provided for its retroactive application to *all* future interests in this Commonwealth to determine whether the remainder to the testator's great-grandchildren was valid. The appellant contends that the lower court should have applied the "possibilities test" to determine whether the great-grandchildren's remainder was valid. The appellant argues that had the proper test, the "possibilities test," been applied, the great-grandchildren's remainder would have been declared void, and the trust principal would have become part of Heil Macklin's residuary estate. We find this argument to be without merit.

As we have previously discussed in this opinion, when the "actualities test" was first adopted by the Legislature in

1947, it was only applicable to future interests created after January 1, 1948. However, the statute was amended in 1978 to make its application retroactive to all future interest regardless of their date of creation. *See* 20 Pa.C.S.A. § 6104(d).

Our Supreme Court applied the amended statute for the first time in *In re Frank*, 480 Pa. 116, 389 A.2d 536 (1978). In *Frank*, the settlor, Issac W. Frank, created an irrevocable trust in 1927 from which he received the trust income for life and after his death, the trust income went to his three grown and married children, Bessie Frank Anathan, William K. Frank and Robert J. Frank for life. The settlor also provided that if a beneficiary child died their spouse would receive their share until their death or remarriage. The trust was to continue until the death of the last of the Frank children or their surviving spouses, at which time the trust corpus was to be distributed to the settlor's grandchildren. *In re Frank, supra*, 389 A.2d at 538.

William K. Frank's first wife, Florence Frank, died after the death of the settlor. William K. Frank then married Mary K. Frank, who outlived her husband, his siblings and their spouses. Upon the death of Bessie Frank Anathan, the last surviving child, the trustees petitioned the court for distribution of the trust corpus to the grandchildren. The trial court refused the trustees' request, holding that the trust would not terminate until Mary K. Frank, daughter-in-law of the testator died or remarried.

On appeal, the grandchildren contended that the trust was only meant to benefit the Frank children's respective spouses at the time of the trust's creation in 1927, and that payment to William K. Frank's second wife was contrary to the settlor's intent. The grandchildren argued payment to Mary K. Frank was against the rule against perpetuities' unborn widow possibility, in effect in 1927, therefore the trust was void and should be distributed to the grandchildren.

Our Supreme Court affirmed the trial court's application of the amended statute making the "actualities test" retro-

actively applicable "to all interests heretofore or hereafter created." 20 Pa.C.S.A. § 6104(d). The court held that under the "actualities test," Mary K. Frank, who was eleven years old at the time of the trust's creation, was a life in being; therefore, the payment of the trust income to her as a surviving daughter-in-law presented no violation of the rule against perpetuities.

In the instant case, as in *Frank*, the trial court correctly applied the retroactive "actualities test" to a remainder which was created in a 1934 will to determine its validity. Under the "actualities test," the appellant's argument that it would have been possible for the testator's daughter, Phoebe Weaver Macklin to have had additional children after the testator's death, and these after-born children could possibly have had children outside the time period allotted under the rule against perpetuities is inapposite, as the fertile octogenarian possibility is no longer part of Pennsylvania law. The "actualities test" is only concerned with events that actually occur during the time period allowed under the rule against perpetuities.

Heil Macklin was alive at the time of his grandfather's death and his mother Phoebe Weaver Macklin did not have any additional children after the testator's death. This makes Heil Macklin the measuring life for the validity of his issue's remainder interest in the trust. The twenty-one year rule against perpetuities period commenced upon Heil Macklin's death. All of the remainder beneficiaries were ascertainable at that time, therefore the remainder to the great-grandchildren or their descendents vested well within the time period allowed by the rule against perpetuities and is valid.

Moreover, the appellant's argument that the remainder to the great-grandchildren is void under the "possibilities test" is also without merit. At the time of the execution of Weaver's will in 1934 the rule against perpetuities for class gifts was in its transitional stage. Our Supreme Court was attempting to eliminate some of the harsher results which occurred to class gifts under the common law rule against

perpetuities' "possibilities test" by adopting the doctrine of vertical separability in 1929. *See Kern's Estate, supra,* and *In re Harrah's Estate, supra.* If the pre–1947 law were to be applied to the instant case, the remainder to Heil Macklin's issue would have been separated from the void remainder and given full effect because it would not have been disruptive to the testator's overall testamentary plan. Accordingly, we find the appellant's second contention to be without merit.

Finally, as it can be readily seen from our discussion of the previous two issues, the appellant's third contention, that the trust terminated during Heil Macklin's lifetime and the trust proceeds became part of his residuary estate, is also without merit. It was the testator's clearly stated intent that his testamentary trust be used to provide income to his grandchildren until their death. Each grandchild's share of the trust proceeds was to be paid over to their issue at the grandchild's demise. The testator's intended distribution to his great-grandchildren was permissible under the 1934 interpretation of the rule against perpetuities for class gifts, and is also valid under today's statutorily amended rule against perpetuities for class gifts. The testator's intentions were followed after the death of Heil Macklin's sister, Ida Weaver Macklin Lilly Wark in 1953, and her share of the trust proceeds were properly distributed to her issue. *See In re Weaver's Estate, supra.*

Instantly, we can find no legitimate reason to thwart the testator's intention that after the death of his grandson, Heil Macklin, the proceeds of the testator's testamentary trust be distributed to his great-grandchildren, the issue of Heil Macklin. Accordingly, we agree with the Orphans' court's finding that the trust did not terminate until Heil Macklin's death. We also agree that the trust proceeds belong to Heil Macklin's issue or their descendents and should be distributed according to the family agreement reached among the appellees.

Order affirmed.

TAMILIA, J., concurred in the result.